Ronald J. CROSE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A04–9411–CR–439.

Court of Appeals of Indiana,
Fourth District.

May 30, 1995.

Transfer Denied Sept. 6, 1995.

David M. Payne, Ryan & Payne, Marion, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Ronald Josef Crose (Crose) appeals from his convictions of two counts of harassment, Class B misdemeanors [1] and one count of intimidation, as a Class A misdemeanor [2].

We affirm.

### ISSUES

Crose presents two issues for our review, which we re-state as follows:

I. Whether the trial court erred on instructing the jury on the insanity defense.

II. Whether the State presented sufficient evidence to support Crose's conviction.

### FACTS AND PROCEDURAL HISTORY

Crose has a long history of mental illness dating back to 1968. In September of 1992, Crose and his wife frequented Richard's Restaurant in Marion, Indiana. Jenell Foreman was a waitress at Richard's. Crose became attracted to Jenell and began to leave love letters for her during his visits to the restau-

---

1. IND. CODE 35–45–2–2 (1988).

2. I.C. 35–45–2–1 (1994).

rant. In these letters, he proclaimed his love for her and pled with her to marry him. Eventually, Crose began coming into the restaurant alone. He would either leave the letters for Jenell, mail them, or give them to third parties to deliver to her. When the quantity of the letters grew disturbingly, Jenell began refusing to accept them, and attempted to return them to Crose. Finally Jenell confided in the restaurant's manager, Norma Horsman. Concerned for her employees, Horsman barred Crose from the restaurant. The letters continued to arrive, and Horsman marked them all "return to sender". Crose returned to the restaurant several times after being barred. On the last such occasion, Horsman summoned the police to escort Crose out of the restaurant. The love letters to Jenell became the basis for one of Crose's harassment convictions.

Following this incident, Crose telephoned the restaurant and made the following statement to Horsman: "Don't mess with me. Don't mess with mine. Or dust you will be and Jenell is mine...." (R. 281). This incident became the basis for Crose's intimidation conviction.

During this same period of time, Crose engaged in similar conduct with Amber Capes, a waitress at Cafe 37 in Marion, Indiana. Crose was also a daily customer at Cafe 37. Crose began showing Amber his drafts of letters to Jenell, and eventually began writing similar letters to Amber. Amber found Crose's behavior increasingly bizarre, and asked him not to return to the Cafe. The love letters that he wrote to Amber became the basis for the second of Crose's harassment convictions.

On April 25, 1994, Crose was charged by information with two counts of harassment, and two counts of intimidation. A warrant was issued for Crose's arrest on April 28, 1994, and he appeared in court *pro se* the following day. The State offered Crose a plea bargain; however, Crose refused to plead guilty. The trial court subsequently appointed counsel. On June 16, 1994, appointed counsel requested a competency examination to determine if Crose was competent to stand trial. The appointed experts disagreed regarding Crose's competency to stand trial; however, after reviewing the reports, the trial judge ruled that Crose was competent to stand trial. Crose later obtained private counsel.

Following a two day trial by jury, Crose was found guilty of two counts of harassment and one count of intimidation, reduced to a Class A misdemeanor. He was sentenced to one year incarceration for the intimidation conviction and 180–days on each of the harassment convictions, all to be served concurrently. Crose appeals.

## I. Insanity Instruction

Crose contends that the trial court erred by instructing the jury on the insanity defense during final instructions. Specifically, Crose argues that he never interjected the defense of insanity and therefore it was misleading and erroneous to instruct the jury on the defense.

The well-settled standard by which we review the tender of jury instructions affords great deference to the trial court's ruling. The manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Jacobs v. State* (1994), Ind.App., 640 N.E.2d 61, 66. Additionally, the instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial and be relevant to the issues the jury must decide in reaching its verdict. *Id.*

The trial court gave final instruction number nine, over Crose's objection:

> You are instructed that if you find from the evidence that the defendant has a mental disease or defect that this is not a defense to a crime in Indiana. A defendant is not excused of a crime unless his mental condition is so severe as to render him unable to appreciate the wrongfulness of his acts.

> You may consider the evidence of the defendant's mental condition in reaching your verdicts only for the purpose of determining if the defendant had the ability to know and appreciate the wrongfulness of his conduct and to form a specific criminal

intent where such is required by the elements of a specific charge.

(R. 92).

Crose concedes in his brief that given his extensive medical history for various mental afflictions, there is no question that he suffers from a mental disease or defect. However, he contends that he did not interpose the defense of insanity, and he was found competent to stand trial by the court. He avers that he introduced abundant evidence on his mental state solely for the purpose of showing that he did not possess the requisite intent to harass the victims herein.

 Crose objected at trial to the court's final instruction as reproduced above, and tendered the following instruction instead:

The State has the burden of proof beyond a reasonable doubt that the defendant specifically intended to commit the alleged crimes.

If you find that the defendant suffered from a mental disease or defect at the time of the alleged offenses, and as a result of the defendant's mental condition he did not have the specific intent to commit the alleged offense, then you must return a verdict of not guilty.

(R. 66). The trial court refused to give Crose's tendered instruction and instead gave the court's instruction. The test for reviewing the propriety of the trial court's decision to refuse a tendered instruction is: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Toops v. State* (1995), Ind.App., 643 N.E.2d 387, 390.

 While Crose's tendered instruction correctly states the law, and the evidence supports the instruction, the substance of the instruction is adequately covered by the instructions given. The court's final instruction number nine encompasses the substance of Crose's tendered instruction. Furthermore, the court instructed the jury on the requisite elements of each offense, including the intent element. The court further instructed the jury on the definition of inten-

tional conduct, and that the State bears the burden to prove each element of the charged offenses beyond a reasonable doubt. Because, we find the court's instruction nine combined with the entire jury charge to be sufficient, we find no error in the court's refusal to read Crose's tendered instruction.

 The first paragraph of the court's instruction informed the jury that a mental disease or defect, not amounting to insanity, is not a defense to a crime in Indiana. This represents an accurate statement of the law. *See Higgins v. State* (1992), Ind., 601 N.E.2d 342, 343 (Mental illness is not a defense to a crime in Indiana unless it is so severe as to render the accused unable to appreciate the wrongfulness of his conduct). The second paragraph of the court's instruction informed the jury that it could consider Crose's mental condition for the purpose of determining whether he was able to form the requisite intent to commit the crimes charged. This also represents an accurate statement of the law.

 The thrust of Crose's strategy at trial revolved around presenting evidence of his mental instability and suggesting that although his actions were eccentric and annoying, he did not intend to commit the crimes with which he was charged. Due to the unusual conduct that led to the charges against Crose, both parties presented substantial evidence that placed Crose's mental instability at issue. Thus, the instruction given by the trial court was supported by the evidence.

We conclude that the court's instruction was a correct statement of the law, applicable to the evidence presented at trial and relevant to the issues the jury was required to decide in reaching its verdict. Reading this instruction in conjunction with the entire jury charge, we perceive no misstatement of the law and do not find the instruction to be misleading. We find no error.

## II. Sufficiency of the Evidence

Crose contends that the evidence was insufficient to support his convictions. Before reaching the merits of Crose's argument, we recite the familiar standard of review by which we review the sufficiency of the evi-

dence. We neither reweigh the evidence nor determine the credibility of the witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the conviction. *Carter v. State* (1994), Ind.App., 634 N.E.2d 830, 834.

■ First, Crose contends that the evidence was insufficient to support his two harassment convictions. Specifically, he argues that he was infatuated with Jenell and Capes, and his love letters conveyed legitimate communications that were not intended to harass either Jenell or Capes. Crose was convicted of one count of harassment of Jenell Foreman and one count of harassment of Theresa Capes. The charging information alleged as follows:

... Ronald Josef Crose, with the intent to harass and/or annoy, and/or alarm Jenell J. Foreman, but with no intent of legitimate communication, did communicate with said person by telephone and forty-two (42) letters, to-wit: numerous telephone calls and numerous letters ...

... Ronald Josef Crose, with the intent to harass, and/or annoy, and/or alarm Theresa A. Capes, but with no intent of legitimate communication, did communicate with said person by cards, letters, and phone calls at her place of employment asking her to marry him and to go away with him ...

(R. 12–13). The statute under which Crose was charged provides as follows:

A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:

(1) makes a telephone call, whether or not a conversation ensues;

(2) communicates with a person anonymously or otherwise, by telegraph, mail, or other form of written communication; or

(3) transmits a false or obscene message, or indecent or profane words, on a Citizens Radio Service channel; commits harassment, a Class B misdemeanor.

I.C. 35–45–2–2(a).

Crose merely asks us to reweigh the evidence, which we will not do. The evidence adduced at trial reveals that Crose persisted in the undesired communication with victims Jenell and Capes, despite their protests. Whether Crose's eccentricity so impaired his thinking that he did not intend to harass the victims was a question reserved for the trier of fact. The jury determined that the State proved each element of the crime of harassment, including the intent element, beyond a reasonable doubt, and we decline to second-guess that decision. *See Moore v. State* (1994), Ind.App., 637 N.E.2d 816, 822, *trans. denied, cert. denied* (It is the function of the trier of fact to determine the weight of the evidence and the credibility of the witnesses).

■ Second, Crose contends that the evidence was insufficient to support his conviction for intimidation. Crose was convicted of one count of intimidation of Norma Horsman. The amended charging information alleged as follows:

... Ronald Josef Crose did communicate a threat to commit a forcible felony, to-wit: "don't mess with me" "don't mess with me" or "dust you will be" to Norma Horsman, Manager of Richard's Restaurant, another person, with the intent that said person engage in conduct against the will of said other person, to-wit: allowing him to come into the premises of Richard's Restaurant and talk with Jenell J. Foreman and other waitresses ...

(R. 80).

Intimidation is defined in our statute as follows:

(a) A person who communicates a threat to another person, with the intent that:

(1) the other person engage in conduct against his will; or

(2) the other person be placed in fear of retaliation for a prior lawful act;

commits intimidation, a Class A misdemeanor.

(b) However, the offense is a:

(1) Class D felony if:

(A) the threat is to commit a forcible felony ...

I.C. 35–45–2–1.

The jury returned a guilty verdict for intimidation, as a Class A misdemeanor, which

is a lesser included offense of the charge alleged in the information. Thus, Crose argues that the jury did not find that he communicated a threat to commit a forcible felony, as alleged in the information. Therefore, pursuant to I.C. 35–45–2–1(a), the alleged threat must have been made with the intent that Norma engage in conduct against her will, or that Norma be placed in fear of retaliation for a prior lawful act. Crose contends that the evidence does not support either conclusion.

Crose is correct in his assertion that the jury returned a verdict of guilty for a Class A misdemeanor, which is a lesser included offense of the charge alleged in the information. He is also correct that the jury did not find that he communicated a threat to commit a forcible felony. However, his contention that the evidence does not support his conviction of intimidation as a Class A misdemeanor is incorrect. The evidence reveals that Crose communicated a threat to Horsman, with the intent that Horsman engage in conduct against her will, to-wit: allow Crose into the restaurant. Horsman testified at trial that Crose's threats put her in fear for her life. The State presented sufficient evidence to support every material element of intimidation, as a Class A misdemeanor, beyond a reasonable doubt.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in reading to the jury final instruction number nine, nor did the trial court err in refusing Crose's tendered instruction. We further conclude that the evidence presented at trial was sufficient to support Crose's convictions of both counts of harassment and one count of intimidation.

Accordingly, the trial court is affirmed in all respects.

DARDEN and STATON, JJ., concur.