James LEUTERITZ, Appellant,

v.

STATE of Indiana, Appellee.

No. 32A04–8810–CR–356.

Court of Appeals of Indiana, Fourth District.

Feb. 21, 1989.

Robert W. Freese, Elmendorf Meyer & Freese, Brownsburg, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

James Leuteritz appeals his conviction of harassment, a Class B misdemeanor,[1] based on one phone call to his former employer. Leuteritz asserts the evidence was insufficient to support his conviction. We agree and reverse.

## FACTS

Leuteritz had worked for Charles Orr [Charles], complainant Debbie Orr's [Debbie] husband. There was a dispute over forty dollars, which Leuteritz claimed Charles owed him for labor. On February 6, 1988 at 7:15 p.m., Leuteritz telephoned the Orrs' residence. Debbie answered and he said: "I would like to speak to Diaper Rash Face Charlie." Orr testified she told him to stop calling her and the conversation ended. She did not remember who hung up. Leuteritz testified Debbie told him to "F-off" and hung up. Orr had received a number of calls in which the caller either hung up or played "weird music," however, the State stipulated it had no evidence Leuteritz made any of these calls and based its case solely on the February 6th telephone call.

## DECISION

Leuteritz asserts there was insufficient evidence he intended to harass, annoy or alarm Debbie, with no intent of legitimate communication. He also asserts the trial court improperly considered the perception of the complainant (Debbie) in inferring the requisite intent.

We first observe that, if the evidence was insufficient, we must reverse and remand for a judgment of acquittal, but before we address sufficiency we have some observations concerning the standard to be applied in determining intent.

■ Leuteritz was convicted of violating IND.CODE § 35–45–2–2 which provides in pertinent part:

"A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:
(1) makes a telephone call, whether or not conversation ensues;

\*　　\*　　\*　　\*　　\*　　\*

commits harassment, a Class B misdemeanor."

During final argument, the trial court stated:

Interesting question. The matter of intent. The law does provide that one of the elements that must be shown that there is no, that the communication is one, that no intent of legitimate communication. (sic) *That intent has to be inferred from the standpoint of the person receiving the communication and not from what unspecified or undisclosed intent the caller might make.* I do not disagree with you Mr. Steuerwald. Mr. Leuteritz may have very well had a legitimate reason or calling, but that was undisclosed to this complaining witness. From her standpoint there appeared to be no legitimate reason, or no intent to communicate any legitimate communication. (Emphasis added)

Leuteritz argues that intent cannot be inferred from the subjective perception of the complainant. Leuteritz is correct. In discussing a constitutional challenge to this statute on the basis of vagueness, this court explained the statute was "not dependent on each complainant's sensitivity

---

1. IND.CODE § 35–45–2–2(a)(1).

and individual reaction. The standard to be used is that of a reasonable man and, using that standard, the statute and the relevant words [harass, annoy, or alarm] have an ascertainable meaning." *Kinney v. State* (1980), Ind.App., 404 N.E.2d 49, 50.[2] Whether the words used by Leuteritz would harass, annoy or alarm a reasonable man is a question of fact, however it appears the trial court applied an incorrect standard.

Returning to the significant issue in this case—the sufficiency of the evidence—we note that, when sufficiency of the evidence to support a conviction is challenged, we do not reweigh the evidence or judge the credibility of witnesses. We consider the evidence most favorable to the State with all reasonable inferences to be drawn therefrom. We will reverse only if there is no substantial evidence of probative value from which the trier of fact could have inferred guilt beyond a reasonable doubt. *Maynard v. State* (1987), Ind., 513 N.E.2d 641.

■ Here, Leuteritz argues there was no substantial evidence of probative value to prove he had "no intent of legitimate communication." I.C. § 35–45–2–2. The State claims the trial court properly inferred Leuteritz had no intent of legitimate communication because Leuteritz did not explain his reason for calling to Debbie. Considering the evidence most favorable to the State and the inferences to be drawn therefrom —that Debbie asked him not to call and he hung up—there was no evidence he did not intend a legitimate communication. On the contrary, Debbie testified she had no dealings with her husband's employees concerning their wages, therefore there was no reason for Leuteritz to explain the purpose of his call to her. The request to speak to "diaper rash face Charlie," although discourteous, was itself a legitimate communication. Leuteritz communicated his desire to speak to Debbie's husband. We can do no more than speculate that, if Leuteritz had been permitted to talk to

Charles, there would have been no legitimate communication. The State failed to prove Leuteritz had no intent of legitimate communication. We note that, were we to affirm this conviction, we might be endorsing an unconstitutional application of the statute and criminalizing behavior which the legislature did not intend to cover in this statute. In *United States v. Darsey* (E.D.Pa.1972), 342 F.Supp. 311, the court in considering a federal statute, 47 U.S.C. § 223(1)(D), which prohibits "repeated telephone calls, during which conversation ensues, solely to harass any person at the called number," expressed similar concerns.

Here Congress evidenced common sense in the affairs of men. In many situations, and most especially in romantic and family conflicts, a person may call another repeatedly and the ensuing conversations may be or become more or less unsatisfactory, unpleasant, heated, or vulgar. Up to a point these are the normal risks of human intercourse, and are and should be below the cognizance of the law. This Court does not read this section of law to extend to these situations, no matter how much sympathy it might have for one side or the other in such a conflict, unless some completely unjustifiable motive, such as revenge or cruelty, motivates such repeated contacts by interstate telephone calls between those known to each other. Only then can such calls be properly called 'solely to harass.'

If this section were drawn or interpreted any more broadly, countless people would be criminalized. The effect of such a law would be to encourage more vengeance than it prevented. And considering the potential burden on the available investigatory staff, the prosecution, and the courts, it is unlikely that more than a tiny and haphazardly random minority would ever be prosecuted. Congress has wisely limited the scope of § 223(1)(D) to the discouragement of certain clear and unjustifiable behavior, and

---

**2.** In *Kinney,* the defendant made a total of 126 calls to the complainant within a ten-day period. In some of the calls the defendant accused the

complainant of sexual promiscuity, in others no conversation ensued.

in less clear cases left the world to struggle as before with the problems and aggravations of romantic and family disputes. *Id.* at 313–14.

The court noted a broad application of statute would raise "grave Constitutional problems relating to the rights of free speech." *Id.* at 312 n. 2. We agree with that court's reasoning.

Reversed with instructions to enter a judgment of not guilty.

RATLIFF, C.J., and CHEZEM, J., concur.