Donald BURTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9512–CR–719.

Court of Appeals of Indiana.

May 20, 1996.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Judge.

Following a bench trial, Donald Burton was found guilty of stalking,[1] a Class A misdemeanor, invasion of privacy,[2] a Class B misdemeanor, and harassment,[3] a Class B misdemeanor. On appeal, he raises the following issues:

1. Whether there was sufficient evidence to support Burton's conviction for harassment.

2. Whether the trial court violated the prohibition against double jeopardy by convicting Burton and imposing consecutive sentences for both the stalking and invasion of privacy offenses.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Burton and the victim, Patricia Kirby, were involved in a romantic relationship which ended in October, 1994. Approximately one month later, Burton beat Kirby so severely that fifty-one stitches were needed to close the lacerations to her face. As a result of the beating, Burton was charged with battery as a Class A misdemeanor and criminal recklessness[4] as a Class D felony.

After the attack, Kirby obtained a permanent protective order against Burton which stated that Burton was:

"ORDERED not to contact, abuse, harass, disturb the peace, threaten, molest or injure ... the Petitioner, [Kirby], ... wherever the Petitioner may be found, including but not limited to, the Petitioner's home or place of employment."

Record at 19. The protective order prohibited Burton from coming within 500 feet of Kirby, from visiting Kirby's residence, and from making telephone calls to Kirby.

During the month of January, 1995, Burton made several telephone calls to Kirby and left messages on Kirby's answering machine such as: "Hi whore," "Hi babe. I can't make it without you. Please talk to me. I love you. I can't make it without you," "RED RUM" (which is "murder" spelled backward), "I hope you have the f——ing windows secured," and "I am coming in the morning." Record at 25–27. On January 31, 1995, after having received approximately seven telephone calls or messages within a two and one-half hour time span, and after learning from a neighbor that Burton was seen in Kirby's driveway earlier that day, Kirby became frightened and called the Marion County Sheriff's Department. Deputy Anders responded to the call and witnessed another telephone call made by Burton to Kirby.

On February 2, 1995, Burton was charged with one count each of intimidation, stalking, invasion of privacy, and harassment. On August 15, 1995, Burton pled guilty to battery, and the State dismissed the criminal recklessness charge. In a bench trial on that same day, the trial judge found Burton guilty of stalking, invasion of privacy, and harassment. The court then ordered the sentences (of 180 days for each of the three offenses) to run consecutively.

## DISCUSSION AND DECISION

### I.

Burton first argues that there was insufficient evidence presented to support his conviction for harassment. Specifically, Burton contends that the State failed to prove that he possessed the requisite intent.

In reviewing claims to the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of the witnesses. *Crose v. State*, 650 N.E.2d 1187, 1191 (Ind.Ct.App.1995). We examine only

1. *See* IC 35–45–10–5.

2. *See* IC 35–46–1–15.1.

3. *See* IC 35–45–2–2.

4. *See* IC 35–42–2–2.

the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* If there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the conviction. *Id.*

■ Harassment is defined as follows:

"A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:

(1) makes a telephone call, whether or not a conversation ensues;

. . . .

commits harassment, a Class B misdemeanor."

IC 35–45–2–2(a). Establishment of the required intent to cause an individual to engage in conduct depends upon the facts and circumstances surrounding the offense. *Hyde v. State,* 531 N.E.2d 472, 473 (Ind.1988).

Burton relies upon *Leuteritz v. State,* 534 N.E.2d 265 (Ind.Ct.App.1989) and *United States v. Darsey,* 342 F.Supp. 311 (E.D.Pa. 1972) in support of his argument. In *Leuteritz,* the defendant telephoned Debbie and Charles Orr's residence. When Debbie answered the phone, Leuteritz said: "I would like to speak to Diaper Rash Face Charlie." Orr told Leuteritz to stop calling, and Leuteritz hung up. The trial court found Leuteritz guilty of harassment. On appeal, however, Leuteritz asserted that there was insufficient evidence to show that he intended to "harass, annoy, or alarm Debbie, with no intent of legitimate communication." *Leuteritz,* 534 N.E.2d at 266. We reversed the trial court's decision and held, first, that intent could not be inferred from the subjective perception of the complainant, and second that:

"Leuteritz communicated his desire to speak to Debbie's husband. We can do no more than speculate that, if Leuteritz had been permitted to talk to Charles, there would have been no legitimate communication. The State failed to prove Leuteritz had no intent of legitimate communication. We note that, were we to affirm this conviction, we might be endorsing an unconstitutional application of the statute and crim-

inalizing behavior which the legislature did not intend to cover in this statute."

*Id.* at 266–67.

In *Darsey,* the court in considering a federal statute, 47 U.S.C. § 223(1)(D), which prohibits "repeated telephone calls, during which conversation ensues, solely to harass any person at the called number," expressed the following concerns:

"In many situations, and most especially in romantic and family conflicts, a person may call another repeatedly and the ensuing conversations may be or become more or less unsatisfactory, unpleasant, heated or vulgar. Up to a point these are the normal risks of human intercourse, and are and should be below the cognizance of the law. This Court does not read this section of law to extend to these situations, no matter how much sympathy it might have for one side or the other in such a conflict, unless some completely unjustifiable motive, such as revenge or cruelty, motivates such repeated contacts by interstate telephone calls between those known to each other. Only then can such calls be properly called 'solely to harass.' "

*Darsey,* 342 F.Supp. at 313–14.

Contrary to *Leuteritz* and *Darsey,* the evidence adduced at Burton's trial is sufficient to show Burton's intent to harass, annoy or alarm Kirby. After Burton battered Kirby, Kirby obtained a permanent protective order against Burton. Burton ignored the order and began making numerous calls to Kirby's residence, many of which were sexually explicit and included threats against Kirby. Burton persisted in undesired communication with Kirby. The evidence is sufficient to support the trial court's conclusion that Kirby had the intent to harass, annoy or alarm Kirby and had no intent of legitimate conversation.

**II.**

■ Burton next argues that the trial court violated the prohibition against double jeopardy by convicting him and imposing consecutive sentences for both the stalking and invasion of privacy offenses. The State argues that the two statutes upon which Bur-

ton was convicted and sentenced are separate, punishable offenses and Burton was properly convicted and sentenced for each offense.

 A defendant's right not to be put twice in jeopardy for the same offense arises from the Constitution of the United States and the Indiana Constitution.[5] The concept of double jeopardy embraces prohibitions against successive prosecution and multiple punishment for the same offense. *Mehidal v. State*, 623 N.E.2d 428, 434 (Ind.Ct.App. 1993). In other words, a person may not be twice punished for a single offense rising from one set of circumstances. *Id.* A person may, however, be convicted and punished for multiple offenses stemming from the same act if the offenses are not identical. *Id.*

We determine whether two or more offenses constitute the same offense by applying the test first established by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not."

*Id.* at 304, 52 S.Ct. at 182.

In this case, it is clear that each of Burton's charged offenses contains an element that the other does not. Stalking is defined by IC 35–45–10–1 as:

> "[A] knowing or an intentional course of conduct involving repeated or continuing harassment of another person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity."

The offense of stalking as defined under IC 35–45–10–5(b)(2) provides that:

> "(a) A person who stalks another person commits stalking, a Class B misdemeanor.
>
> (b) The offense is a Class A misdemeanor if at least one (1) of the following applies:
>
> . . . .
>
> (2) A protective order or other judicial order under IC 31–1–11.5 has been issued by the court to protect the same victim or victims from the person and the person has been given actual notice of the order."

One commits invasion of privacy when:

> "A person who knowingly or intentionally violates:
>
> (1) A protective order issued under:
>
> (A) IC 34–4–5.1–5(a)(1)(A);
>
> (B) IC 34–4–5.1–5(a)(1)(B);
>
> (C) IC 34–4–5.1–5(a)(1)(C);
>
> that orders the respondent to refrain from abusing, harassing, or disturbing the peace of the petitioner;
>
> . . . .
>
> commits invasion of privacy, a Class B misdemeanor."

IC 35–46–1–15.1.

A comparison of the statutes shows that stalking requires proof that the perpetrator entertained the intent to cause the other person to feel terrorized, frightened, intimidated, or threatened. Invasion of privacy requires proof that the defendant violated a protective order issued under IC 34–4–5.1. Although stalking may be enhanced to a Class A misdemeanor upon proof that the defendant violated a protective order, it is a protective order issued under IC 31–1–11.5, not one issued under IC 34–4–5.1. Thus, each statutory provision requires proof of an additional fact; invasion of privacy and stalking are separate offenses under the "same elements" test, and are not the same for double jeopardy purposes.

 Our analysis does not end with a comparison of the relevant statutory elements. Instead, the factual bases alleged by the State in the charging informations, and

---

**5.** "No person shall be put in jeopardy twice for the same offense." Ind. Const., Art. 1, § 14. The Fifth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, provides, "nor shall any person be subject for the same offense to be twice put in jeopardy."

upon which the charges were predicated must also be examined. *Delahanty v. State,* 658 N.E.2d 660, 662 (Ind.Ct.App.1995).

Burton's stalking information reads as follows:

"On or about January 10, 1995, through and including on or about February 1, 1995, in Marion County, State of Indiana, the following named defendant, Donald Burton, knowingly or intentionally engaged in a course of conduct involving repeated or continuing harassment of Patricia Kirby, another person; and further that said conduct would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened, and that said conduct actually caused said other person to feel terrorized, frightened, intimidated, or threatened; and further that said conduct included at least two of the following actions:

1. On or about January 10, 1995, said defendant did called [sic] Patricia Kirby at work.

2. On or about January 23, 1995, said defendant did called [sic] Patricia Kirby numerous times.

3. On or about January 28, 1995, said defendant did call Patricia Kirby at her home 3 times.

4. On or about January 29, 1995, said defendant did call Patricia Kirby to inquire about a van parked near her home.

5. On or about January 31, 1995, said defendant did call and harass Patricia Kirby numerous times . . . .;

and further that said other person is a victim and that a Protective Order has been issued by a Court under Cause No. 49F029411PO3406 to protect said victim from the defendant; and further that the defendant has been given notice of said Order."

*Record* at 21. Burton's invasion of privacy information states the following:

"On or about January 31, 1995, in Marion County, State of Indiana, . . . the following named defendant, Donald Burton, did knowingly or intentionally violate[:]

A protective order issued under IC 34–4–5.1–5(a)(1)(A), (B), or (C)

. . . .

That ordered said defendant to refrain from abusing, harassing or disturbing the peace of Patricia Kirby by appearing at her home and calling her numerous times."

*Record* at 23.

In other words, the invasion of privacy information required proof that on January 31, 1995, Burton violated a protective order by appearing at Kirby's home and calling her numerous times. The stalking information required proof that Burton knew a protective order had been issued and that he harassed Kirby on at least two of the five listed occasions, one of which included Burton's calling and harassing Kirby on January 31, 1995. While Burton's stalking conviction could have been based on any two of the five listed occasions, it was possible for the conviction to be based on Burton's actions on January 31, 1995. These same actions were the sole basis of the invasion of privacy conviction. As a result, the manner in which the offenses were charged relieved the State of the requirement of proving additional facts to gain the invasion of privacy conviction beyond those required to prove the stalking conviction. Therefore, double jeopardy principles bar conviction for both offenses.

### CONCLUSION

We affirm the convictions for stalking and harassment. The matter is remanded to the trial court with instructions to vacate the conviction and sentence on the invasion of privacy charge.

Reversed and remanded.

SULLIVAN and GARRARD, JJ., concur.