Geronimo GARZA, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–0003–CR–106.

Court of Appeals of Indiana.

Oct. 12, 2000.

Patrick R. Ragains, Anderson, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Geronimo Garza appeals his conviction after a jury trial of stalking,[1] a Class D felony. Garza contends on appeal that there was insufficient evidence to sustain his conviction.[2]

We affirm.

### FACTS AND PROCEDURAL HISTORY

Garza was Rebecca Eglen's supervisor when she worked for the Madison County Division of Family and Children Services in Anderson ("DFC"). In December 1994, Eglen began having problems with Garza because he gave her too many compliments directed toward her physical appearance and too much attention. Eglen testified that Garza's daily and unusual comments made her "uneasy" and "uncomfortable" (R. at 118, 119).

On one occasion, Garza came over to Eglen's side of her desk to show her how to fill out a form that she already knew how to fill out. When Garza leaned so close to Eglen that his breath would move her hair, she told Garza that he was "crowding her" (R. at 121). On another occasion, while Garza and Eglen carpooled to Indianapolis for a training conference, Garza asked Eglen if she would like to take in a matinee, which offer she declined. On yet another occasion while the two were attending a meeting in Indianapolis, Garza gave a rose with thorns to Eglen. When he gave her the rose, Garza told Eglen that the rose reminded him of her because "it was hurtful yet beautiful" (R. at 137).

In October of 1995, Eglen found another job with Vocational Rehabilitation. Also in October, Eglen attended a farewell luncheon for a former co-worker at DFC, which Garza also attended. After the luncheon, Eglen received a bouquet of flowers and an unsigned note. The following week, Garza called Eglen at her new place of employment and asked whether she enjoyed the flowers. Eglen replied that she did not appreciate the flowers, and it was not appropriate for him to send them. (R. at 128, 129). During the conversation, Garza inquired about the cost of Eglen's membership at Excel, a gym. Eglen told Garza that she did not know about the cost of membership and he should check into the YMCA.

A month later, on her birthday, Eglen again received roses along with a note signed by Garza. The beginning of the note read: "HATE, ANGER, BITTERNESS, MALICE, VENOM, HELLISH PRISONS OF OUR OWN MAKING" (R. at 132). After receiving the roses and note, on December 19, 1995, Eglen wrote to Garza: "Consider this letter a final notice and warning. I do not appreciate your attention whether it is in the form of flowers, notes, or phone calls and I want it stopped." (R. at 134).

In the summer of 1996, Eglen learned that Garza had joined Excel. Eglen would frequently see Garza watching her while she was working out. Garza approached Eglen at Excel and asked her out to lunch. Eglen refused. In December of 1996, Garza followed Eglen from Excel to the grocery store. While in the grocery store, Garza passed Eglen and commented that "I would like some of the green stuff," (R. at 155), meaning Eglen's money.

---

1. Ind.Code § 35–45–10–5.

2. Garza was also charged with criminal mischief, a Class A misdemeanor, see Ind.Code § 35–43–1–2(A)(1). The jury found Garza not guilty of criminal mischief.

## STANDARD OF REVIEW

■ When reviewing a claim that the evidence was insufficient to support a criminal conviction, we do not reweigh evidence or assess the credibility of witnesses. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000). Instead, "we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

## DISCUSSION AND DECISION

To support the charge against Garza for stalking, the State had to demonstrate that Garza: 1) knowingly or intentionally; 2) engaged in a course of conduct involving continuous or repeated harassment; 3) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened; and 4) actually caused that person to feel terrorized, frightened, intimidated, or threatened. Ind.Code §§ 35–45–10–1, 35–45–10–5. Harassment involves conduct directed toward a victim that includes, but is not limited to, repeated or continuing impermissible conduct that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. Ind.Code § 35–45–10–2.

■ The evidence is sufficient to sustain Garza's conviction of stalking. Garza knew that Eglen did not appreciate or welcome his advances and comments to her. While an employee under Garza and even after she left, Eglen declined Garza's lunch invitations. In addition, Garza continued to send flowers and notes, and to telephone Eglen after she demanded orally and in a note that he stop.

Further, Garza's repeated flowers, notes, and phone calls to Eglen were continuous over a two-year period. Garza continued to disrupt Eglen by calling her at her new place of employment and even at the gym she attended.

Eglen testified that she felt uneasy and uncomfortable because of Garza's comments and actions. The jury could have properly inferred that Eglen was reasonable to feel terrorized, frightened, intimidated or threatened.

Garza argues that we should adopt the reasoning of Judge Barteau's dissent in *Waldon v. State*, 684 N.E.2d 206, 207–08 (Ind.Ct.App.1997) where the defendant's encounters with his ex-wife caused the ex-wife emotional distress. However, *Waldon* is distinguishable from the present case and Judge Barteau's reasoning does not support Garza's argument. Judge Barteau noted that the actions of which the victim complained involved the victim's "observ[ing] the defendant in various degrees of proximity to herself." *Id.* at 209. Most of the "observations" took place in busy public areas, and most of them did not involve even eye contact. The defendant never made a threat or obscene gesture of any kind. Judge Barteau noted that there was no evidence of intent to harass. *Id.* at 210.

Garza's actions, by contrast, included repeated and expressly unwelcome flowers, notes, and phone calls, indicating Garza's actions were intended to harass. Based on the record, we find evidence of probative value from which the jury could conclude that Garza caused Eglen "to feel terrorized, frightened, intimidated, or threatened." Ind.Code § 35–45–10–1.

Affirmed.

ROBB, J., and MATHIAS, J., concur.