Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2012, 8:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**J. MICHAEL SAUER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

PAUL LEWIS,                          )
                                     )
    Appellant-Petitioner,         )
                                     )
        vs.                  )     No. 53A01-1201-PC-1
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Respondent.          )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc R. Kellams, Judge
Cause No. 53C02-0710-PC-1042

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Paul Lewis appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

## Issues

Lewis raises three issues, which we restate as:

I.      whether he was denied the effective assistance of trial counsel;

II.     whether he was denied due process because the State failed to disclose material evidence; and

III.    whether he is entitled to a new trial due to the cumulative effect of trial counsel's alleged errors and the State's failure to disclose evidence.

## Facts

The facts, as stated in Lewis's direct appeal, follow:

> During the early morning hours of May 6, 2006, Lewis and his girlfriend, Rachel Pruitt, were at Anthony Rucker's apartment in Bloomington. At some point, Pruitt walked into one of the bedrooms to plug in her cell phone. Lewis followed Pruitt and grabbed her by the hair. Lewis started banging Pruitt's head against the wall, placed his hands around her throat, and squeezed until she "started seeing black." [Trial] Tr. p. 136. After hearing the commotion, Rucker walked into the bedroom and saw Lewis choking Pruitt. Lewis was also banging Pruitt's head against the wall, and Rucker could feel the vibrations through his feet. Pruitt's knees were buckling, her mouth was turning "white and bluish," and she was unable to speak because of the choking. Id. at 91. Although Rucker was able to initially pull Lewis away, Lewis again approached Pruitt and struck her in the face.
>
> While Rucker initially called 911, he hung up because he did not want to get Lewis or Pruitt in trouble. However, Bloomington Police Officer Joseph Henry was dispatched to

2

the scene in response to the 911 hang-up call. When Officer Henry arrived, he spoke with Rucker, who informed him that a female had just been battered in his apartment. At that point, Officer Henry saw Pruitt looking out of an upstairs window and crying. Pruitt came downstairs but was hysterical and crying so hard that she was unable to speak. After several minutes, Pruitt told Officer Henry that Lewis had grabbed her by the hair, slammed her head into the wall multiple times, grabbed her by the throat with both hands, and choked her. She also told Officer Henry that Lewis had slapped her in the face several times. Pruitt had red marks on her chest and around her neck.

After Pruitt complained of a sore head and neck, Officer Henry drove her to the Bloomington Hospital emergency room. Dr. John Ray examined Pruitt and diagnosed her with a concussion, bruising, and muscle strain. Pruitt scored her pain as a "nine" on a scale of one to ten, with ten being the most severe pain. Id. at 165, 183-84. When considering the nature and severity of Pruitt's injuries, Dr. Ray did not believe that Pruitt had exaggerated her pain level.

Lewis v. State, No. 53A04-0609-CR-511, slip op. at 2-3 (Ind. Ct. App. Mar. 19, 2007), trans. denied.

The State charged Lewis with Class C felony battery and Class D felony intimidation and alleged that he was an habitual offender. A jury found Lewis guilty as charged and found that he was an habitual offender. The trial court sentenced Lewis to twenty-three years in the Department of Correction.

Lewis appealed his convictions and argued that the evidence was insufficient to convict him of Class C felony battery because Pruitt's injuries did not amount to "serious bodily injury." Id. at 4. We concluded that the jury could have reasonably inferred from the evidence that Pruitt received "serious bodily injury" and held that the evidence was sufficient to sustain Lewis's conviction. Id. at 6. We also rejected Lewis's argument that

3

the trial court should have granted his request for a mistrial due to the jury foreman mistakenly signing the wrong verdict form and then tearing up that form.

Lewis filed a petition for post-conviction relief, arguing ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and suppression of evidence by the State. After a hearing at which Lewis's trial counsel testified, the post-conviction court entered findings of fact and conclusions thereon granting in part and denying in part Lewis's petition. The post-conviction court found ineffective assistance of appellate counsel and reduced Lewis's sentence to twenty-one years, but the post-conviction court rejected the remaining arguments. Lewis filed a motion to correct error, which was deemed denied. Lewis now appeals.

**Analysis**

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this

4

review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

## I. Ineffective Assistance of Trial Counsel

Lewis first argues that he was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, Lewis must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. See Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied.

A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

## A. Lesser Included Instruction

Lewis first claims that his trial counsel was ineffective because he failed to request a jury instruction on the lesser included offense of Class A misdemeanor battery or argue that the evidence was insufficient to demonstrate the "serious bodily injury" necessary to

5

prove Class C felony battery. "It is well-established that trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness." Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998). "This is so even when 'such choices may be subject to criticism or the choice ultimately prove detrimental to the defendant.'" Id. (quoting Garrett v. State, 602 N.E.2d 139, 142 (Ind. 1992)).

Our supreme court has held that "a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense." Id. In fact, our supreme court noted: "'It is not sound policy for this Court to second-guess an attorney through the distortions of hindsight.'" Id. (quoting Page v. State, 615 N.E.2d 894, 896 (Ind. 1993)).

In Autrey, the defendant was found guilty of murder and argued on appeal that his trial counsel should have tendered instructions regarding lesser included offenses of murder. Our supreme court noted that "[t]he record contain[ed] numerous indications that trial counsel made the decision not to tender lesser included offenses as part of an 'all or nothing' trial strategy." Id. at 1141. Rejecting the defendant's ineffective assistance of counsel argument, the court noted that his trial counsel had attempted to establish a foundation for the potential acquittal of his client. Id. "The fact that the jury found the defendant guilty does not make this strategy deficient." Id. at 1142. "This was an instance where the guilt of defendant rested upon the credibility of the witnesses, which is the sole province of the jury." Id.

6

Although Lewis relies on portions of his trial counsel's post-conviction hearing testimony regarding his trial strategy and argues that Autrey is inapplicable, we disagree. Based on Autrey, the post-conviction court here found that Lewis's trial counsel also employed an "all or nothing" strategy. Appellant's App. p. 104. Lewis's trial counsel argued throughout the trial that Rucker and Pruitt were not credible, that their stories were inconsistent with Pruitt's injuries, the condition of her clothing, and the condition of the apartment, that Rucker and Pruitt had motivations to lie, and that the State had failed to prove its case beyond a reasonable doubt. His trial counsel repeatedly argued that, although something happened in the apartment that evening, the State failed to prove that Lewis battered Pruitt. A request for a lesser included offense instruction would have implied that Lewis did, in fact, batter Pruitt, which would have been inconsistent with trial counsel's arguments throughout the trial. We further note that, on direct appeal, we rejected Lewis's argument that the evidence was insufficient to demonstrate serious bodily injury.

We cannot say that Lewis's trial counsel's strategy and failure to request an instruction on the lesser included offense was "so deficient or unreasonable as to fall outside of the objective standard of reasonableness." Autrey, 700 N.E.2d at 1141; see also Roche v. State, 690 N.E.2d 1115, 1126 (Ind. 1997) ("The decision to pursue such a theme would, of course, have been a matter of trial strategy which cannot form the basis for establishing ineffective assistance of trial counsel unless there was no sound basis for not pursuing the strategy."). "Because trial counsel is afforded considerable discretion in choosing strategy and tactics, a strong presumption arises that counsel rendered adequate

7

assistance." Reed v. State, 866 N.E.2d 767, 769 (Ind. 2007). The post-conviction court found that Lewis's trial counsel rendered adequate assistance, and we cannot say those findings are clearly erroneous.

### B. Investigation, Preparation, and Cross-examination

Lewis next argues that his trial counsel was ineffective because he failed to adequately investigate, prepare for trial, or cross-examine the witnesses. Specifically, Lewis argues that his trial counsel: (1) confused the jury with "disjointed references to a person named Vaughn;" (2) failed to speak with Dr. Ray, who treated Pruitt in the emergency room, before he testified; (3) failed to challenge Dr. Ray's concussion diagnosis; (4) failed to challenge Dr. Ray's testimony that Pruitt tested positive for opiates as a result of medication he gave her; (5) failed to investigate Pruitt's visit to the hospital ten days earlier; (6) failed to present evidence regarding Pruitt's opiate addiction; (7) failed to properly cross-examine Pruitt regarding her prescription; (8) failed to argue that Pruitt went to the hospital to avoid having her probation revoked; (9) failed to use Pruitt's deposition to impeach her testimony that Lewis threatened to kill her; (10) failed to use Rucker's earlier statement to impeach his testimony that Lewis threatened to kill Pruitt; (11) failed to use the investigating officer's testimony to challenge Pruitt and Rucker's claim that Lewis threatened Pruitt; (12) failed to challenge Rucker's claim of a close friendship with Lewis; (13) failed to impeach Rucker as to when he called the police; and (14) failed to properly impeach Rucker and Pruitt by showing differences between their stories. Appellant's Br. p. 15.

The post-conviction court did not separately address each of these allegations of inadequate representation. Rather, the post-conviction court found:

> Petitioner concedes that trial counsel did in fact impeach the testimony of State's witnesses. However, he further contends that counsel was ineffective by enumerating the myriad ways in which counsel did not attack the witness' [sic] credibility. Petitioner takes issue with trial counsel for challenging the credibility of State witnesses only "in a limited manner." However, counsel is permitted to make reasonable judgments in strategy, including how and when to attack witness credibility. Trial counsel testified that his perception was that the jury had seen and acknowledged the impeachment of witness' testimony; he did not feel that further attacks were necessary. According to precedent, this is the prerogative of trial counsel and is awarded deference so long as it is not unreasonable.
> Given that trial counsel possessed and put into action a trial strategy that he felt adequate, the court finds that further failure to impeach witness' testimony at trial does not constitute ineffective assistance of counsel.

Appellant's App. p. 105.

It is undisputed that effective representation requires adequate pretrial investigation and preparation. Badelle v. State, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), trans. denied. However, it is well-settled that we should resist judging an attorney's performance with the benefit of hindsight. Id. As such, "[w]hen deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments." Boesch v. State, 778 N.E.2d 1276, 1283 (Ind. 2002). Furthermore, "the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." Kubsch v. State, 934 N.E.2d 1138, 1151 (Ind. 2010). The nature and extent of cross-examination is a

9

matter of strategy delegated to trial counsel. Waldon v. State, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997), trans. denied.

During his opening statement, Lewis's trial counsel argued that Pruitt and Rucker's stories were not logical, that they were not credible, and that they were using drugs and alcohol on the night in question. He objected repeatedly during the State's direct examination of Officer Henry and cross-examined him extensively regarding Pruitt and Rucker's appearances, their intoxication, Pruitt's injuries, and the condition of the apartment. During Rucker's testimony, Lewis's trial counsel objected during direct examination and cross-examined Rucker regarding the condition of the apartment, Pruitt's injuries, and their ingestion of drugs. During Pruitt's testimony, trial counsel cross-examined her extensively regarding medications she was taking, alleged injuries she sustained, the condition of the apartment, her probation, and the blood screen performed at the hospital. He also objected to the admission of Dr. Ray's testimony and cross-examined him regarding medications given to Pruitt, the blood screen performed at the hospital, and autoerotic asphyxiation. During closing arguments, he emphasized that every element of the offense must be proven beyond a reasonable doubt, that Pruitt and Rucker had motivations to lie to the police, that Pruitt and Rucker's stories were inconsistent, that their stories were inconsistent with Pruitt's injuries, the condition of the apartment, and the condition of her clothing, and that Pruitt's injuries were consistent with autoerotic asphyxiation. Trial counsel argued that the State failed to prove the offense beyond a reasonable doubt.

Lewis's trial counsel attacked Pruitt and Rucker's credibility and repeatedly pointed out inconsistencies. Our review of the record reveals that the references to Vaughn were not unexplained or confusing, that Pruitt's drug use[1] and criminal history was adequately addressed, and that Dr. Ray's testimony was used to raise the issue of autoerotic asphyxiation. Trial counsel's failure to explain that Pruitt tested positive for opiates prior to being given any medication at the emergency room did not prejudice Lewis. The jury was aware that Pruitt had been using marijuana and tested positive at the emergency room for other drugs. The jury was also aware that Pruitt was on probation and could have had her probation revoked for illegal drug usage. The other areas that trial counsel failed to impeach Pruitt or Rucker on are simply too minor to establish the prejudice necessary to prove an ineffective assistance of counsel claim.

Trial counsel's strategy was adequate, and we cannot say that the post-conviction court's finding of no deficient performance by Lewis's trial counsel is clearly erroneous. Furthermore, Lewis has failed to demonstrate that he was prejudiced by the minor alleged deficiencies in trial counsel's cross-examination or investigation.

## II.  *Undisclosed Evidence*

Next, relying on Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), Lewis argues that the State violated his right to due process when the State failed to provide him with information. Lewis argues that the State failed to disclose the following information: (1) Pruitt falsely told the hospital staff that she was in extreme pain so she

---

[1] The trial court had granted a motion in limine to prevent any reference to Pruitt or Rucker's prior substance use or abuse, including drugs and alcohol.

11

would be given opiate medication; (2) Kirsten Cardwell, the emergency room nurse, told the prosecutor's investigator that she was skeptical of Pruitt's claims because her injuries were inconsistent with her story; (3) Pruitt did not think Lewis ever hit her but that he was just "rough" with her.

Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or the bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97. To establish a Brady violation, a defendant must show "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." Stephenson v. State, 864 N.E.2d 1022, 1056-57 (Ind. 2007), cert. denied. Evidence is material under Brady if the defendant demonstrates "a reasonable probability that the result of the proceeding would be different if the State had disclosed [the] evidence." Id. at 1057. However, "the State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence." Id.

The post-conviction court here noted that the State "did not object" during the post-conviction proceedings to the admission of the instances of alleged failure to disclose and that the "salient issue" was whether any of the instances produced "a reasonable probability of undermining confidence in the outcome of the trial."[2]

---

[2] The State failed to file an answer to Lewis's petition for post-conviction relief and admitted:

12

Appellant's App. p. 103. The post-conviction court found that the evidence "doesn't appear to be anything so obviously exculpatory that it undermine[d] the confidence in the outcome of the case." Id.

The first claim is that Pruitt falsely told the hospital staff that she was in extreme pain so she would be given opiate medication. Given the State's admission, we have no context for this statement or how it was determined to be false. Regardless, the jury was presented with evidence that Lewis choked Pruitt and slammed her head onto the wall, that her neck was red, that Pruitt was diagnosed with a concussion, and that Dr. Ray did not believe Pruitt's complaints of pain were exaggerated. The jury was also aware that Pruitt had taken various drugs illegally that day. We agree with the State that, even if this alleged statement had been admitted, "it would have constituted merely one more piece of impeachment for a cross-examination that already vigorously attacked Pruitt's

---

(1) The State of Indiana failed to disclose to Lewis that Kirsten Cardwell, the nurse who treated the alleged victim in the emergency room at Bloomington Hospital, told the prosecutor's investigator that she was skeptical of the alleged victim's claims because her "injuries" were inconsistent with her story of what occurred.

(2) The State of Indiana failed to disclose to Lewis that the alleged victim told a Monroe County Prosecutor's investigator that she did not think Lewis ever hit her, but that he was just "rough" with her.

\* \* \* \* \*

(4) The State of Indiana failed to disclose to Lewis that the alleged victim falsely told Bloomington Hospital staff that she was in extreme pain so she would be given opiate medication.

Appellant's App. p. 55; P-C.R. Trans. pp. 7-8.

13

credibility." Appellee's Br. p. 27. Lewis has not demonstrated that this undisclosed evidence was material.

The second assertion of undisclosed evidence is that Cardwell, the emergency room nurse, told the prosecutor's investigator that she was skeptical of Pruitt's claims because her injuries were inconsistent with her story. At the post-conviction hearing, Cardwell testified that she did not recall Pruitt or making the statement to the investigator. Again, even if Cardwell's statement to the investigator had been admitted at trial, it was contradicted by Dr. Ray's testimony that he did not believe Pruitt's complaints of pain were exaggerated. Further, Lewis's trial counsel had already repeatedly argued that Pruitt's injuries were not consistent with her story. Lewis has not demonstrated a reasonable probability that the result of the proceeding would be different if the State had disclosed this evidence.

The third statement was that Pruitt did not think Lewis ever hit her but that he was just "rough" with her. Pruitt testified that Lewis grabbed her, "bang[ed her] head off of the wall repeatedly," choked her by squeezing her neck, and tried to hit her in the bathroom. Trial Tr. p. 136. She told Officer Henry that Lewis had slapped her in the bathroom. Rucker also testified that Lewis was hitting Pruitt in the bathroom with "his open hand and closed hand." Id. at 101. To the extent this third statement was inconsistent with the testimony that Lewis actually hit Pruitt in the bathroom, we cannot say that its admission would have resulted in a reasonable probability of a different outcome. Pruitt's credibility was already extensively called into question, and the choking and banging her head on the wall were enough to sustain a conviction for

14

battery. Lewis has failed to demonstrate that the post-conviction court's finding on this issue is clearly erroneous.

### III. Cumulative Errors

Lewis also argues that he is entitled to a new trial as a result of the cumulative effect of the ineffective assistance of trial counsel and undisclosed evidence. According to Lewis, even if his individual ineffective assistance of trial counsel and undisclosed evidence claims fail, he is entitled to relief based on the cumulative effect of those alleged errors.

Our supreme court has held that "[e]rrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." French, 778 N.E.2d at 826. "A conviction based upon an accumulation of defense attorney errors, when counsel's mistakes do substantial damage to the defense, must be reversed." Id. We agree with the State that the errors alleged by Lewis are minor and "nitpicking." Appellee's Br. p. 29. We have already concluded that trial counsel's performance was not deficient and, if it was, Lewis was not prejudiced. Moreover, the evidence suppressed by the State was not material. We cannot say that the alleged errors did substantial damage to Lewis's defense.

### Conclusion

The post-conviction court's findings regarding ineffective assistance of trial counsel and the Brady violation were not clearly erroneous. Moreover, the cumulative effect of the alleged errors does not warrant relief. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.