NESBITT, Judge.
Blair appeals his conviction on a charge of third degree murder, contending that the evidence was insufficient to prove that his criminal act caused the victim’s death. We disagree and affirm.
In considering Blair’s contention we are required to view the evidence in the light most favorable to sustaining the verdict. E.Y. v. State, 390 So.2d 776 (Fla. 3d DCA 1980). With that principle in mind, we review the evidence.
On Sunday, October 30, 1984, Blair met Keith Miles and Doug Carnifax at a convenience store. Miles and Carnifax were then living in a trailer with the victim, Billy Becraft. Carnifax testified that he complained to Blair about pain in his back and that arrangements were made for Carnifax to obtain some drugs from Blair. Carnifax and Miles obtained about a quarter of a gram of methadone and returned to Be-craft’s trailer, where all three of them used the drug. Carnifax testified that later Sunday night Blair came by Becraft’s trailer and gave him about ⅛ of a gram of methadone and showed him another gram. While Carnifax never saw Blair give Miles or Becraft the other gram of methadone, he testified that after Blair left the trailer he saw about a gram of methadone in Becraft’s bedroom, and that, as far as he knew, there had been no other methadone in the trailer before Blair had arrived.[1] He also testified that he was aware of no other supplier of methadone in the Big Coppitt Key area. Carnifax further stated that Miles and Becraft had snorted cocaine on Saturday night but that, to the best of his knowledge, there was no cocaine in the trailer after Saturday night. Carnifax also indicated that sometime in the early morning hours he awoke and found Becraft passed out in the kitchen. He revived her *1280 by placing her in the shower and she then went to bed.
Monday morning Carnifax left the trailer for a doctor’s appointment. When he returned, he asked Miles how Becraft was doing. Miles responded by saying, “I think she is doing fine. She is still sleeping.” Then, after a pause, “No, wait, she’s not breathing.” Carnifax tried to give her artificial respiration without success and he and Miles took her to the hospital. Becraft remained comatose until she died a few days later. Carnifax also testified that when he returned to the trailer from the hospital there was about ⅛⅛ a gram of methadone left and that after the incident Miles told him that he (Miles) had injected Becraft with methadone a number of times.
Three witnesses testified in regard to the cause of death. One of the witnesses was John Kenhart, a toxicologist who performed tests on Becraft’s body fluids, which revealed the following: Blood withdrawn from Becraft when she was admitted to the hospital and still alive, ante mor-tem blood, contained .77 mgs. per liter methadone. Kenhart classified that level as a “rather high” one which could account for a person’s death. The ante mortem blood sample was not suitable to test for cocaine because a preservative was not used. Consequently, that test did not reveal the presence of cocaine. The ante mortem urine sample tested positively for a cocaine metabolite. Kenhart indicated that such a result meant that cocaine had been ingested sometime in the 48 hours before Becraft’s admission to the hospital and, given the amount of metabolite in the urine, the cocaine was probably ingested several hours before she got to the hospital. Tests of postmortem blood samples were negative for cocaine and showed .26 mgs. per liter of methadone. Kenhart testified that his findings are consistent with death by methadone overdose, but admitted on cross-examination that he could not say with scientific probability that cocaine did not cause Becraft’s death.
Another state witness was Dr. Greenwood, who treated Becraft at the hospital. Dr. Greenwood testified that based on the information he had received and the fact that Becraft had pinpoint pupils, which are indicative of narcotics use, he treated her with a drug called Narcam, hoping to reverse the effects of the narcotics. Because there was a positive response to the treatment he concluded that methadone was the predominant problem. Dr. Greenwood acknowledged that the presence of a cocaine metabolite in the ante mortem urine complicated a determination of cause of death. He indicated that a cocaine overdose could not be entirely ruled out as the cause of death, but that, in his opinion, the main cause of death was a cardiopulmonary arrest resulting from an overdose of methadone. It is important to note that Dr. Greenwood testified that both cocaine and methadone, when injected, enter the bloodstream rapidly and, if they were to cause a cardiopulmonary arrest, would do so shortly after the lethal dose was administered. Since Becraft was in full cardiopulmonary arrest when she was presented at the emergency room, Dr. Greenwood concluded that whichever drug caused the arrest had to have been administered shortly before Be-craft was brought to the hospital.
Finally, the state presented the testimony of A.J. Fernandez, the Monroe County Medical Examiner. Fernandez testified that the medical evidence was consistent with death by an overdose of either drug alone, or an interaction of the two.
Blair contends that the evidence is not sufficient to exclude the reasonable hypothesis that a cocaine overdose caused Be-craft’s death. We disagree.
In reviewing the sufficiency of the evidence, the question of whether it fails to exclude every reasonable hypothesis of innocence is for the jury to determine and, where there is substantial competent evidence to support the jury’s decision, the judgment will not be reversed. Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, — U.S.-, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Rose v. State, 425 So.2d 521 (Fla.1982), cert. denied, 461 U.S. 909, 103 S.Ct. *1281 1883, 76 L.Ed.2d 812 (1983); Herman v. State, 472 So.2d 770 (Fla. 5th DCA 1985).
In the present ease, we find the evidence sufficient to support a jury finding that an overdose of methadone supplied by the defendant caused Becraft’s death. Although the expert scientific and medical testimony may not have established methadone as the cause of death beyond a reasonable doubt, that evidence, in combination with Carni-fax’s testimony, was sufficient for the jury to conclude, beyond a reasonable doubt, that Becraft overdosed on the methadone delivered by Blair. See Brate v. State, 469 So.2d 790, 794 (Fla. 2d DCA 1985) (Florida law supports affirmance of “convictions obtained on the basis of medical testimony advancing reasonable theories of causation, when such testimony has been supplemented by other evidence supporting the causal relation at issue.”) All of the experts agreed that Becraft’s death was consistent with a methadone overdose. Dr. Greenwood, based on his treatment of Becraft, indicated that in his opinion the main cause of death was a cardiopulmonary arrest resulting from an overdose of methadone. Mr. Kenhart testified that in his opinion, based on the amount of cocaine metabolite in Becraft’s ante mortem urine, the cocaine had been ingested several hours before her arrival at the emergency room. That testimony must be viewed together with Dr. Greenwood’s testimony that whatever drug killed Becraft had to have been ingested shortly[2] before her presentation at the hospital. It must also be considered with Car-nifax’s testimony that Miles had injected Becraft with methadone a number of times and that there was no cocaine in the trailer after Saturday night. It would be reasonable for the jury to conclude beyond a reasonable doubt that the cocaine metabolite in Becraft’s system was the result of the cocaine ingested Saturday night and that the cause of death was an overdose of methadone which Blair supplied. Accordingly, the conviction is
Affirmed.

. Carnifax gave a number of statements to a Detective MacNeil. Detective MacNeil testified that throughout the statements Carnifax was consistent in identifying Blair as the supplier of the methadone.

. While no specific period of time was mentioned, it is clear from a reading of the entire testimony that Dr. Greenwood was not referring to an administration of the drug "several hours” before Becraft was admitted to the hospital.