715 So.2d 339 (1998)
Thomas BUTLER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2079.
District Court of Appeal of Florida, Fourth District.
August 12, 1998.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Appellant challenges his conviction and sentence for aggravated stalking. Because the state failed to offer substantial, competent evidence as to every element of the offense, we reverse.
The crime of aggravated stalking is defined in section 784.048(3), Florida Statutes (1995), as follows:
Any person who willfully, maliciously, and repeatedly follows or harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily harm, commits the offense of aggravated battery.
Here the aggravated stalking was alleged to have been in the form of harassment, and the victim was appellant's wife, Vonda. According to the statute, "`Harasses' means to engage in a course of conduct directed at a specific person that causes substantial emotional *340 distress in such person and serves no legitimate purpose." § 784.048(1), Fla. Stat. (1995). The statute also furnishes a definition of "course of conduct." "`Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." § 784.048(2). Constitutionally protected conduct is explicitly excepted. Id.
The alleged victim of appellant's aggravated harassment, characterized by the prosecutor as somewhat immature, lived with her parents. Her parents would not allow appellant to live there, and did not want him in the house. Nevertheless, when her parents were away the victim would, unbeknownst to them, allow appellant to live with her in the house.
There was vague testimony about a few unpleasant incidentsusually unspecified as to time, and not linked to other conduct on which the prosecution was relying. Some of these incidents were acknowledged to have occurred outside the temporal boundaries established by the informationJuly 6, 1996 to January 17, 1997. The best described occurrences took place on those two datesJuly 6, 1996, and January 17, 1997.
On July 6, 1996, according to the testimony, Vonda's brother heard appellant and Vonda arguing in the living room of the parents' home. The brother had no reason to believe appellant had forced his way into the house. The brother thought appellant struck Vonda, but was not sure. The brother got appellant out of the house, but appellant remained on the porch and the brother thought appellant threatened to beat Vonda up. Appellant threw a chair through a window. On some other occasion, unspecified as to time, Vonda had a knot on her head which her brother thought showed appellant had hit her. On an occasion remembered by Vondabut when it was she could not say, and it is by no means clear that this was during the period referred to in the informationappellant removed a room air conditioner from a window and Vonda hid in a closet until he left. She did not say why she hid in the closet. There was testimony appellant and Vonda argued frequently about money, other guys and respect.
On January 17, 1997, appellant went to the school which Vonda's child (but not appellant's) attended and at which she volunteered. He had to go to court, and tried to get her to go to court with him. There was testimony that he was insistent and abusive. The school authorities got him to leave, but he returned and physically attacked Vonda. He subsequently pleaded guilty to charges of battery, trespassing and disorderly conduct arising from this incident. There was testimony appellant sometimes came to school with Vonda, but this was the only occasion on which he became violent.
Vonda admitted that she sometimes hid appellant in her room or had him at the house when her parents were away. She did not think this ever occurred after the July incident. However, she gave appellant's father money to bond appellant out of jail in August after he was arrested for alleged burglary, which was based on his being in her parents' house without permission. She also went to court with appellant to give a statement to his former counsel, but could not say when that was. The burglary charge ended in judgment of acquittal in the instant proceedings.
Vonda testified she and appellant had marital relations at a hotel on one occasion during the period specified in the information. She did not think she had been with him on Christmas Day, but she was not sure. She also said she had gotten back together with appellant after the January incident.
The rule is well established that in order to present a prima facie case the state must prove each and every element of the offense beyond a reasonable doubt. When the state fails to meet this burden the case should not be submitted to the jury, and a judgment of acquittal should be granted. Williams v. State, 560 So.2d 1304, 1306 (Fla. 1st DCA 1990); Ponsell v. State, 393 So.2d 635, 636 (Fla. 4th DCA 1981).
We conclude the state failed to make out a prima facie case of aggravated stalking. The evidence as to each element of the offense was vague and diffuse. No substantial, competent evidence was presented that appellant harassed Vonda within the meaning *341 of the statute. As the statute says, to harass is to engage in a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, and directed at a specific person, that causes substantial emotional distress in such person. Vonda never testified as to any "emotional distress." Nor was there testimony establishing any "series of acts."
Even assuming, arguendo, that the evidence of the events of July 6, 1996 and January 17, 1997, respectively satisfied the definition of "harass," we nevertheless find that there was not substantial, competent evidence as to the other necessary elements of aggravated stalking by harassment. The evidence of a credible threat with the intent to place a person in reasonable fear of death or bodily injury was not established by the state. Although, the alleged victim's brother thought appellant had threatened to beat up the victim during the July incident, the alleged victim, who testified, did not say she was put in fear by appellant.
The element the state most glaringly failed to prove is the one concerning repetition, that is, that the defendant "repeatedly" harassed the victim. The accused and the alleged victim were in a marital relationship that is fairly characterized in the evidence as being "on and off." Given unrebutted evidence that the mates reconciled one or more times between the events, we find there cannot be sufficient continuity in appellant's alleged conduct on July 6, 1996 and January 17, 1997the only incidents of putative harassment that come close to being reasonably specifiedto satisfy the requirement that the harassing conduct be engaged in repeatedly. The incidents are disjointed and discrete from each other and are not instances of repeated harassing conduct. No other incidents that might remotely be characterized as harassment were proved to have taken place repeatedly within the time frame established in the information.
Because the state failed to offer substantial, competent evidence as to each and every element of the offense of stalking, the trial court should have granted appellant's motion for judgment of acquittal.
We reverse judgment and sentence and remand for discharge of appellant in so far as the instant conviction is concerned.
DELL, GUNTHER and KLEIN, JJ., concur.