760 So.2d 1085 (2000)
Omar T. BAKER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D98-2333.
District Court of Appeal of Florida, Fifth District.
June 23, 2000.
*1087 Paul Morris of Law Offices of Paul Morris, P.A., Coral Gables, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Lori E. Nelson and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, for Appellee.
W. SHARP, J.
Baker appeals his judgment and sentences after a jury convicted him of first degree felony murder and armed robbery. He raises numerous points on appeal which we find, after a careful review of the record, have no merit.
First, Baker argues the trial court erred in denying his motion for acquittal at the close of the state's case because the evidence was insufficient (independent of Baker's out-of-court statements and confessions) to establish the elements of either armed robbery or first degree felony murder. Fla. R.Crim. P. 3.380(b); Morris v. State, 721 So.2d 725 (Fla.1998). This argument references two different rules in criminal cases: corpus delicti and necessity to acquit a defendant if the state fails to prove a prima facie case before resting.
With regard to the corpus delicti rule,[1] the prosecution must present independent evidence that "the charged crimes were committed" before being able to use a defendant's own statements or confession in court. Williams v. State, 689 So.2d 393 (Fla. 3d DCA 1997). The corpus delicti cannot be based solely on a defendant's extra-judicial statements. In a homicide case, the state must show a person died, the death was caused by a criminal agency of another, and the identity of the deceased. Franklin v. State, 718 So.2d 902 (Fla. 5th DCA 1998). In a robbery case, it must be shown that there was a taking of money or property from a person, with the intent to deprive the person of that money or property, and the use *1088 of force, violence, assault or putting in fear.
In this case, the state established that Pedro Negron, a clerk in an Amoco filling station in Daytona Beach, was approached early in the morning (about 1:00 a.m.) by two men. The surveillance camera, which was played for the jury, showed Pedro responding to the men at the service window, putting down a telephone on which he had been talking, getting some cigars and cigarettes, taking money from the cash drawer, and handing it over to a person outside. Almost immediately thereafter, Pedro received a lethal gun shot to his chest. He fell to the floor. A few seconds elapsed while the camera showed him still moving on the floor. Then a person, later identified as Damien Cokley, was filmed coming through the window and shooting Pedro in the head twice. Pedro was identified at the trial as the victim of the taped homicide. The medical examiner and detectives testified as to what they saw, and the cause of Pedro's death.
As regards the robbery charge, the store owner who was called to the crime scene shortly after the murder took place, verified that $202.00 was missing from the cash drawer and that Pedro Negron had been on duty that night. Although the state did not expressly show Pedro was "put in fear," that is a fact a jury could infer from his immediate response in handing over the store's cash. In addition, force was used on Pedro in the form of gun shots, enabling the two men to escape from the crime scene. There was also evidence from independent sources (not Baker) that Pedro knew and recognized Baker and Cokley, and could have identified them.
Further, the state presented hearsay statements made by Cokley to detectives, and others, that Baker was the primary planner and executor of the robbery/murder. They were admitted at trial without objection. At first Cokley said Baker shot Pedro once, then he (Cokley) fired the last two shots. Cokley also told Detective Doyle that Baker was the one with the gun at the window. Other witnesses, exclusive of Baker's statements, linked Baker to the murder weapon. Thus the corpus delicti of both crimes was well-established, independent of Baker's extra-judicial statements.
The second rule referenced by Baker's motion for judgment of acquittal requires the state to prove with competent substantial evidence, the elements of the crimes charged before resting its case.[2] In determining whether the state has done so, the defendant's admissions or confessions to others outside the trial context may be used.
A trial court should not grant a motion for acquittal in a criminal case if there is any view of the evidence, which is favorable to the state's case, from which the jury could reasonably believe or infer facts that would prove the state's charges. Woods v. State, 733 So.2d 980, 985 (Fla. 1999); Cox v. State, 711 So.2d 1323 (Fla. 5th DCA 1998). On appeal, the reviewing court must look at the evidence most favorable to sustain the jury's verdict. Blair v. State, 481 So.2d 1279 (Fla. 3d DCA 1986).
The evidence in this case was extremely strong. The determination of the identities of the two men at the window at the Amoco station resulted from excellent police work. Homicide detectives traced the murder weapon, a Lorcin .380 automatic, from the time it was borrowed by Baker from Raymond Carter, to Baker's taking it to the Amoco station, retrieving it from Cokley, returning it to Carter, and then taking it back. It then was passed on (or stolen) down a line of friends and acquaintances; Tesfa Walters, to Simroy Sampson *1089 to Marlin Sampson, who recovered it for the police.
As part of the state's case, some of Baker's friends and acquaintances repeated at the trial various statements Baker had made to them about the Amoco murder. Baker told Danton Wood, shortly before the robbery/murder, he wanted to go and make some money, "hit a lick," which means commit a robbery. Later, Baker told him there was a "body on the gun," meaning it had been used to kill someone. Woods also said Baker and Cokley had hinted to him that they were involved in the murder.
Tesfa Walters (also known as Sharkey) testified he rented a car with Baker, and they drove around together. The murder weapon was in the car. Baker told him there was a body on the gun. Raymond Carter, the original owner of the murder weapon, testified Baker told him also there was a body on the gun, and that Sharkey was "homeboy with a guy I burnt," meaning Pedro had been a friend of Sharkey's and that Baker had shot Pedro. Kenneth Davis testified that he was also riding around with Baker, and that Baker told him he and Cokley "went and took care of business and he did what he had to do." He said Baker told him he had to "pop" him (shoot Pedro).
After being arrested for these crimes, Baker made a statement that was placed in evidence. In the statement he said Cokley suggested they rob a store. He asked the clerk for money and a box of Phillies (cigars). After Pedro handed the money and the Phillies over, Baker heard a bang beside his ear. Baker got scared, turned and ran. He denied having a gun or knowing that Cokley had one. He admitted going up to the window first, and rubbing his stomach to suggest he had a gun. Baker said the clerk understood the situation and what was wanted, although Baker asked only for the cigars and "change." Baker never gave Cokley any part of the stolen money and he admitted telling Sharkey and Woods there was a body on the gun.
Clearly there was sufficient evidence from which a jury could have concluded force and violence were used by Baker and Cokley to accomplish the robbery. See Pangburn v. State, 661 So.2d 1182 (Fla. 1995); Bass v. State, 698 So.2d 885 (Fla. 4th DCA 1997). See also Robinson v. State, 692 So.2d 883 (Fla.1997). Inferences could be drawn that either Baker or Cokley shot Pedro with the weapon supplied by Baker, or that Cokley shot him, with Baker's assistance, encouragement, and expectation. If not the shooter, sufficient evidence established Baker was a principal to both crimes. Christie v. State, 652 So.2d 932 (Fla. 4th DCA 1995); Stripling v. State, 645 So.2d 589 (Fla. 3d DCA 1994); Douglas v. State, 214 So.2d 653 (Fla. 3d DCA 1968) (evidence viewed in a light most favorable to conclusion of fact finder).
As part of the defense's case, Cokley testified that he and he alone had the idea to shoot Pedro. But the jury did not have to, nor did they, believe him. Prior to trial, Cokley had pled guilty to first degree murder in exchange for a life sentence. At the trial, the state confronted him with his many other statements concerning how the murder took place, including his accusations that Baker shot first. Cokley admitted Baker obtained the gun for the purpose of doing the robbery, and brought it to the Amoco station. Cokley testified the night of the murder Baker had the gun tucked in his waist under his shirt, the way he "usually" carried a gun. The robbery was Baker's idea. He described Baker as the leader of the two, and the one that usually got his way. Cokley also said that when he joined Baker at the window, Baker had the gun pulled out and was holding it in his right hand, on the attendant. Cokley also admitted he shot Pedro because he knew Pedro could and would identify them as the perpetrators, and he knew that armed robbery was a serious crime.
*1090 As his second point, Baker argues that the trial judge erred in allowing the prosecutor to death-qualify the jury because the death penalty in this case was not available, since the "shooter," Cokley (the more guilty party), received a life sentence. Slater v. State, 316 So.2d 539 (Fla.1975). The defense had moved to strike the state's notice of intent to seek the death penalty, pursuant to Florida Rules of Criminal Procedure 3.202. However, this motion was not called for hearing until immediately prior to jury selection, and the trial judge ruled it was untimely. Prior to making closing arguments, the prosecution announced it was not seeking the death penalty.
Although the defense renewed its motion at the close of all the evidence based on the alleged bad faith of the prosecutor in filing the notice in the first place, the court noted the issue might be moot depending on the jury's verdict. Trial counsel agreed to leave it until after the verdict, and did not obtain a ruling. Nor did defense counsel make any further motions regarding the prosecutor's alleged bad faith in seeking the death penalty. It appears defense counsel, through its inaction, waived this point on appeal by failing to get timely rulings by the trial court. Armstrong v. State, 642 So.2d 730 (Fla. 1994).
However, even if defense counsel had obtained a ruling, this point is without merit. At no time did the state concede it had no basis to seek the death penalty. It appears that a determination of who was the more culpable party was debatable, until all of the evidence was taken at trial. See Hazen v. State, 700 So.2d 1207 (Fla. 1997); Slater. Thus no reversible error occurred in this case.
As his third point, Baker argues the trial court erred in permitting Detective Doyle to testify as to his opinions and theories about the case. Many of Doyle's opinions were elicited by defense counsel on cross-examination. For example, defense counsel asked Doyle if he thought Baker ever had the gun during the commission of the crimes. Doyle replied that he believed Baker had the weapon prior to going to the window, and he was still not sure Baker did not fire the first gun shot. The defense also pressed Doyle as to his theories about motives for the crimes, and his resolution of the conflicting stories he had been told.
On re-cross examination, the court allowed the state to re-address whether Doyle thought Baker had possession of the gun, and the motive for the murder, based on his investigations and interview of the witnesses. Defense counsel did not object and failed to preserve some of his objections. Castor v. State, 365 So.2d 701 (Fla. 1978). However, given the fact that most of Doyle's opinions were first elicited by the defense, and others were corroborated by the testimony of prior witnesses, which substantiated Doyle's opinions, any opinion testimony erroneously given by the detective was harmless error. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). See also Pierre v. State, 597 So.2d 853, 855 (Fla. 3d DCA 1992).
Fourth, Baker argues the trial court denied his motion for mistrial because Detective Doyle testified that Baker had been given the opportunity to provide an exculpatory motive for the killing, but failed to do so, implicating his Fifth Amendment right to remain silent.[3] We do not think Detective Doyle's comment should be construed as one pointing out a defendant's failure to present evidence. See Thomas v. State, 726 So.2d 357 (Fla. 1st DCA 1999); Valle v. State, 474 So.2d 796 (Fla.1985), receded from on other grounds, State v. Owen, 696 So.2d 715 (Fla.1997).
Fifth, Baker argues the trial court erroneously denied his motion for mistrial, because a state witness (Kenneth Davis), volunteered on cross-examination that when he and Baker were both in a holding cell, Baker threatened to kill him and his family. See Manly v. State, 640 *1091 So.2d 142 (Fla. 4th DCA 1994). After the comment was made, defense counsel made no objection or motion. Thereafter, the state conducted re-direct of Davis. The defense re-crossed, and the court took a fifteen minute recess. Defense counsel then objected and made his motion. At that point, it was untimely. Pottgen v. State, 616 So.2d 1125 (Fla. 1st DCA 1993). In addition, the testimony was admissible. When a defendant threatens a witness, the threat is admissible as evidence of consciousness of guilt. Swafford v. State, 533 So.2d 270, 271 (Fla.1988); Sireci v. State, 399 So.2d 964, 968 (Fla.1981); Lopez v. State, 716 So.2d 301, 307 (Fla. 3d DCA 1998); Coronado v. State, 654 So.2d 1267, 1269 (Fla. 2d DCA 1995); Quarrells v. State, 641 So.2d 490, 491 (Fla. 5th DCA 1994).
Sixth, and last, Baker argues the trial court erred in failing to specify in the written judgment whether the sentence for robbery was to run concurrent with the sentence for felony murder. The trial court said at the sentencing hearing the sentences were to run concurrent to one another, and the oral pronouncement governs a conflict. See Brammer v. State, 554 So.2d 671 (Fla. 2d DCA 1990). In addition, section 921.16 provides that sentences run concurrently if not otherwise specified.[4] Thus, to save judicial time and effort, we correct the written sentences to provide they run concurrently with one another.
AFFIRMED in part; Sentence Corrected.
HARRIS and PETERSON, JJ., concur.
NOTES
[1] Corpus delicti is Latin for "body of the crime," and in the context of criminal case, it means proof a crime has been committed, and that it was accomplished by a criminal human agency. Black's Law Dictionary 7th ed. 346, quoting Justin Miller "The Criminal Act" in Legal Essays in Tribute to Orrin Kip McMurray, at 469, 478 (1935).
[2] Kearse v. State, 662 So.2d 677, 682 (Fla. 1995); Butler v. State, 715 So.2d 339 (Fla. 4th DCA 1998).
[3] U.S.C.A. Const.Amend. 5; Art. 1, § 9, Fla. Const.
[4] 921.16. When sentences to be concurrent and when consecutive

(1) A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit or in consolidated indictments, informations, or affidavits shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively. Sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently.