SHARP, W., J.
D.L.D., Jr. appeals from his adjudication of delinquency based on a finding by the trial court that he committed aggravated stalking with a credible threat.[1] He argues the trial court erred in denying his motion for judgment of acquittal at the close of the state’s evidence because the state failed to establish a prima facie basis from which the trier of fact could find the *747 essential elements of the crime were proven.
In evaluating a motion for judgment of acquittal, all facts and reasonable inferences arising from them must’ be drawn in favor of the state.[2] On appeal, an appellate court reviews the denial of motions for judgment of acquittal on a de novo standard,[3] but it must give credence to the trial court’s possible reliance on the manner in which witnesses testified, rather than simply the words reported in the transcript. This is a “thin” case. However, we think the essential elements of the crime charged were sufficiently established to withstand a motion for judgment of acquittal.
Section 784.048(3) defines aggravated stalking with a credible threat as follows:
Any person who willfully, maliciously, and repeatedly follows or harasses another person and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury, commits the offense of aggravated stalking, a felony in the third degree, punishable as provided in section s 775.082, 775.083, or 785.084, Fla. Stat.
In addition, the term “harass” is defined by section 784.048(l)(a) as:
To engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose.
The state presented evidence which established that D.L.D. and J.R. were middle school students in the same class. Almost every day for at least two months, D.L.D. had been hitting J.R., calling her obscene names, jumping on her, pushing her, and threatening her. This activity occurred mostly outside the classrooms, and J.R. had not reported this conduct to her teachers because she thought they would not do anything about it. J.R. did complain to her parents, who in turn called the School Resource Officer. J.R. had reported D.L.D.’s behavior before to the Officer and to a friend, T.S.
In January 2001, J.R. and T.S. went to the Officer’s office to report the fact that D.L.D. had called J.R. an ugly name and hit her, and that he had also pushed T.S. D.L.D. suddenly appeared in the office to dispute their accounts, trying to blame them for having started the altercation. Unable to resolve the matter, the Officer asked D.L.D. to leave, assuring him he would call him back later to hear his side of the story. D.L.D. became very angry, and before leaving he threatened J.R. with “getting her” when she left the office. J.R., as well as the Officer and T.S., believed D.L.D. intended to carry out his threat. At that point, the Officer arrested D.L.D.
The defense first argues that the state failed to adduce sufficient evidence that D.L.D. harbored malice or ill will against J.R. However, that inference logically follows from the continual pattern of harassing behavior indulged in by D.L.D. against J.R. over the preceding two month period of time. In addition, the Officer and T.S. were present at the time D.L.D. became very angry and made a specific threat to “get” J.R., and they testified about it. These behaviors provide a sufficient basis to establish malice and ill will on the part of D.L.D.
Next, the defense argues that the state failed to establish a prima facie case of “harassment” as that term is defined by the statute, because it failed to establish any basis to conclude J.R. suffered “sub *748 stantial emotional distress.” She did not testify she was upset, unable to sleep or eat, or made to cry. She might have testified about this kind of subjective emotional upset had defense counsel not objected to the state’s question about whether she was “scared,” which was sustained.
In any event, we agree with our sister court in McMath v. Biemacki, 776 So.2d 1089 (Fla. 1st DCA 2001), that in determining whether an incident or series of incidents creates substantial emotional distress for a victim, the distress should be judged not on a subjective standard (was the victim in tears and terrified), but on an objective one (would a reasonable person be put in distress when subjected to such conduct?) In McMath, the court determined that no reasonable person would be placed in substantial emotional distress because the defendant merely tried to talk to the “victim” and the victim thought he did not understand her.
We conclude that D.L.D.’s conduct, continuing on an almost daily basis, of pushing and hitting J.R. at school (a place J.R. had to be and could not avoid), and jumping on her and calling her obscene names, would likely substantially emotionally upset any normal person under the reasonable person standard. Further, the fact that J.R. complained repeatedly to her parents and to the Officer about D.L.D.’s behavior is sufficient to permit an inference that she was (in fact) emotionally upset by D.L.D.’s behavior. Even if a subjective standard were applicable, a person need not be reduced to tears and hysteria in order to be considered “substantially emotionally distressed.”
AFFIRMED.
COBB and HARRIS, JJ., concur.

. § 784.048, Fla. Stat.

. Woods v. State, 733 So.2d 980 (Fla.1999); Codie v. State, 313 So.2d 754 (Fla.1975); Baker v. State, 760 So.2d 1085, 1088 (Fla. 5th DCA 2000).

. State v. Smyly, 646 So.2d 238 (Fla. 4th DCA 1994).