858 So.2d 1202 (2003)
Alan Thomas HUCH, Appellant,
v.
Susan Sareena MARRS, Appellee.
No. 3D02-2469.
District Court of Appeal of Florida, Third District.
November 12, 2003.
Glantz & Glantz, North Miami Beach; and Mitchell Haymes, for appellant.
Susan Sareena Marrs, pro se, for appellee.
Before GERSTEN, RAMIREZ and SHEPHERD, JJ.
GERSTEN, J.
Alan Thomas Huch ("Huch"), appeals the trial court's order granting the appellee, Susan Sareena Marrs'("Marrs") petition for an injunction against repeat violence. We affirm.
In 1988, Huch met Marrs at her workplace in Texas, where they maintained a platonic friendship until 1993. During this time, Huch tried to win Marrs' affection with expensive gifts. Marrs ended the friendship after Huch became possessive, told others that she was his girlfriend, and threatened to cause trouble between Marrs and her boyfriend.
*1203 Huch however, continued to "crack on."[1] Huch ignored Marrs' express wishes to be left alone. He sent Marrs flowers several times a week and even posed as a delivery man to get past security at Marrs' home and work. Huch also showed up uninvited at social gatherings that Marrs attended. After Huch started peering through Marrs' windows at home, she reported him to the Dallas police.
Huch's harassment continued and became so overwhelming, that Marrs moved to Florida in 2001 in an attempt to flee from Huch. In July of 2002, Huch found Marrs through the internet and showed up at her residence in Miami. Huch again posed as a flower delivery man to get past security. Fearing for her safety, Marrs called the police.
Huch admitted to the police that he had obsessive feelings for Marrs. She was understandably scared that Huch was constantly watching her and had followed her half-way across the country. Marrs believed that Huch was delusional, that his obsessive behavior was increasing, and that his behavior had the potential to escalate.
In July of 2002, Marrs filed a petition for injunction against Huch pursuant to section 784.046, Florida Statutes (2001). After a hearing, the trial court entered an injunction for protection against repeat violence based on a finding of stalking. Huch then filed this appeal challenging the sufficiency of the evidence. We conclude the evidence was sufficient to support the entry of an injunction against repeat violence, and affirm.
Stalking is a series of actions that, when taken individually, may be perfectly legal. However, these actions constitute illegal behavior when they are not consensual and intimidate or scare a victim. U.S. DEP'T OF JUSTICE, DOMESTIC VIOLENCE AND STALKING. THE SECOND ANNUAL REPORT TO CONGRESS UNDER THE VIOLENCE AGAINST WOMEN ACT (1997). An injunction for protection from repeat violence hopefully prevents this type of unconsented harassment from escalating. This is particularly important because stalking and obsessive/possessive behaviors are indicators of high victim risk. JACQUELYN CAMPBELL, ASSESSING DANGEROUSNESS: VIOLENCE BY SEXUAL OFFENDERS, BATTERERS, AND CHILD ABUSERS (Sage Publ'ns, 1995).
Not only are injunctions designed to prevent more serious physical injuries from occurring, they also provide stalking victims relief from emotional distress. Abravaya v. Gonzalez, 734 So.2d 577 (Fla. 3d DCA 1999); see Predick v. O'Connor, 260 Wis.2d 323, 660 N.W.2d 1 (Ct.App.2003)(stalking victims often suffer long-term emotional injuries at the hands of their stalkers and many experience depression, anxiety, obsessive-compulsive behaviors and even symptoms of post-traumatic stress disorder). All fifty states and the District of Columbia now have stalking statutes.
Florida's "repeat violence statute," provides that a trial court may issue an injunction when a respondent commits two incidents of violence or an incident of stalking directed against the petitioner or the petitioner's immediate family. Section 784.046(1)(b), Florida Statutes (2001).[2]
*1204 Stalking is further defined by section 784.048, Florida Statutes (2001), as any person who willfully, maliciously and repeatedly follows or harasses another person. "Harass" means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose. § 784.048, Fla. Stat. (2001). "Course of conduct" is defined as a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. § 784.048, Fla. Stat. (2001).
The purpose of the stalking statute is to criminalize unlawful conduct that falls short of assault or battery. Curry v. State, 811 So.2d 736 (Fla. 4th DCA 2002). The stalking and repeat violence statutes are designed to protect victims, by ensuring that they do not have to be injured or threatened with death before they could stop a stalker's harassment. Curry, 811 So.2d at 741.
In the present case, Huch repeatedly showed up uninvited to Marrs' home, workplace and social activities, and followed her from Texas to Florida. Huch knew that Marrs did not want him to contact her and yet, he used underhanded methods to gain access to her. We find these activities show a continuing, ongoing act that caused emotional distress to Marrs and served no legitimate purpose. See Pallas v. State, 636 So.2d 1358 (Fla. 3d DCA 1994)(telephone calls numbering fifty times in one day falls within the definition of harassment); Garza v. State, 736 N.E.2d 323 (Ind.Ct.App.2000)(defendant's actions including repeated and unwelcome flowers, notes and phone calls were sufficient to support conviction of stalking); State v. Collins, 580 N.W.2d 36 (Minn.Ct.App.1998)(sending two letters was acting "repeatedly," for purposes of harassment statute). We agree with the trial court's conclusion that sufficient evidence existed to establish that Huch stalked Marrs.
The seriousness of the crime of stalking cannot be overstated. The National Violence Against Women Survey, the first national survey conducted on the issue of stalking, found that over eight million women, approximately one in every twelve, have been stalked at some point in their lives. Joseph C. Mershman, The Dark Side of the Web: Cyberstalking and the Need for Contemporary Legislation, 24 HARV. WOMEN'S L.J. 255, 258 (2001). Although some acts of stalking may appear benign, these acts are often a prelude to violence against the victims including assault, rape and murder.[3] We commend the trial court for recognizing the seriousness of Huch's actions and entering the injunction.
Affirmed.
NOTES
[1] A term frequently used in Patrick O'Brian's maritime series. PATRICK O'BRIAN. MASTER AND COMMANDER (W.W. Norton & Co., Inc., Haddin Craftsmen 1970). The term means simply to pursue without backing off.
[2] Florida has recently added cyberstalking as an additional means of stalking. See § 784.048, Fla. Stat. (2003). Other states have defined stalking as unconsented contact including: following or appearing within the sight of the victim, approaching or confronting the victim in a public place or on private property, appearing at the workplace, school or residence of the victim, entering or remaining on property owned by the victim, contacting the victim by phone, sending mail or electronic communications, or placing an object on or delivering an object to property owned, leased or occupied by the victim. See § 750.411(f)(i)-(vii), Mich. Comp. Laws (2003); § 609.749(2)(1)-(7), Minn.Stat. (2003); § 1173(4)(a)-(g), Okla. Stat. (2003); § 163.730(3)(a)-(k), Or.Rev.Stat. (2003).
[3] It is estimated that this type of violence occurs between 25% and 30% of the time in cases that started out as stalking. Joseph C. Mershman, The Dark Side of the Web: Cyberstalking and the Need for Contemporary Legislation, 24 HARV. WOMEN'S L.J. at 258.