STONE, J.
T.B., a seventeen-year-old juvenile, was found guilty of the offense of misdemeanor stalking. The sole issue is whether the evidence was sufficient to establish the elements of the charge. We affirm.
The offense took place at a mall where the victim worked at a skin care kiosk. The victim was at the kiosk when T.B. initially walked past and uttered the words “faggot, queer.” T.B. was looking at the victim when he said the words. His tone of voice was “angry, purposely intentful [sic] to upset [the victim] or hurt [his] feelings”; it was “sinister and low and mean-sounding.” T.B. laughed after making the comment.
*653 Fifteen to twenty minutes later, another incident occurred. T.B. yelled “faggots,” loudly, from the second floor, directly above the victim. Some shoppers laughed and smirked; others looked sympathetically at him. The victim was “enraged and very angry.”
At that point, the victim closed the kiosk. He told a security guard what had happened and then returned to the kiosk to re-open.
An hour later, T.B. approached the kiosk with a group of kids and again taunted the victim with the words “faggot, queer.” According to the victim, they were all laughing. He described the tone of the third utterance as “[tjypical smart-aleck kind of way. You know, just trying to be funny, thinking that they’re entertaining someone.”
The victim described the impact the incidents had on him:
First it started out as anger, frustration that I couldn’t do anything about it, that I couldn’t change what had happened, you know.
And then after the third incident and — you know, I didn’t see them for the rest of the time because they were— obviously walked in the direction going — in the other direction of the mall.
I did proceed — I went to the bathroom, I had to have my little emotional breakdown, if you will, you know — because it’s embarrassing, you know, especially when there are other people around and, you know, comments are obviously being directed to — the few comments that I saw being directed towards me.
And it’s just — -it was embarrassing, it was hurtful, you know. And no one should have to deal with that.
[[Image here]]
I went to the bathroom and ... I was just like, you know, trying to talk to myself, like Jordan, you know, calm down, this is fine, whatever. And it just eventually got to me and I just — I probably sat there and probably cried for like ten minutes in the bathroom, you know, out of being embarrassed, out of being hurt. And just the whole situation itself was just very hurtful and I needed to cry.
The security guard confirmed that the victim was very upset. Although he did not hear the words, he did observe T.B. staring at the victim.
At the close of the state’s case, T.B. moved unsuccessfully for a judgment of dismissal. A trial court’s denial of a motion for judgment of dismissal is reviewed by appellate courts de novo. The evidence must be viewed in the light most favorable to the state, and if a rational trier of fact could find that the elements of the crime have been established beyond a reasonable doubt, sufficient evidence exists to sustain the conviction. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
The crime of stalking is defined in section 784.048(2), Florida Statutes (2007), as follows:
Any person who willfully, maliciously, and repeatedly ... harasses ... another person commits the offense of stalking, a misdemeanor of the first degree....
“‘Harass’ means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such a person and serves no legitimate purpose.” § 784.048(l)(a), Fla. Stat. (2007). “Course of conduct,” as defined in the statute, “means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of ‘course of conduct.’ Such constitutionally protected activity includes *654 picketing or other organized protests.” § 784.048(l)(b), Fla. Stat. (emphasis added). “Stalking is a series of actions that, when taken individually, may be perfectly legal.” St. Fort v. State, 943 So.2d 814 (Fla. 4th DCA 2006) (quoting Huch v. Marrs, 858 So.2d 1202, 1203 (Fla. 3d DCA 2003)).
The dictionary definition of “series” is “a number of things or events of the same class coming one after another in spatial or temporal succession.” Webster’s New Collegiate Dictionary 1050 (1980). “Repeatedly” is defined as “again and again.” Id. at 973. Thus, engaging in a “series” of acts or acting “repeatedly” in the context of the statute means what the commonly approved usage of these words suggest — acting more than once. Here, T.B. acted three times, each incident separated from the others by the passage of time; fifteen to twenty minutes between the first and second incidents, and the third, by another hour. There is no indication in the statute or relevant case law that three separate incidents occurring in a ninety minute time period, would not constitute a “series” of acts or “repeated” harassment of the victim. The cases cited by T.B. are all distinguishable. See Butler v. State, 715 So.2d 339 (Fla. 4th DCA 1998) (finding there was no testimony establishing a “series of acts” where defendant and alleged victim were involved in violent incidents on two occasions six months apart; nor did victim testify as to any “emotional distress”), Stone v. State, 798 So.2d 861 (Fla. 4th DCA 2001) (holding defendant’s plea to charge of aggravated stalking was not supported by adequate factual basis where events occurred during single incident where defendant rammed his truck repeatedly into victim’s relatives’ home after unsuccessfully attempting to kick down the door), and Poindexter v. Springer, 898 So.2d 204, 207 (Fla. 2d DCA 2005) (finding three letters mailed in one envelope constituted only one act).
We recognize that offensive speech, alone, does not subject the speaker to criminal sanctions. Here, T.B. does not argue that his conduct is constitutionally protected or served a legitimate purpose. However, we note our supreme court’s holding that conduct which amounts to stalking under section 784.048 — -“whether by word or deed” — is not protected by the First Amendment. See Bouters v. State, 659 So.2d 235, 237 (Fla.1995) (upholding § 748.048 as constitutional against challenges of overbreadth and vagueness). Rather,
[t]he statute proscribes a particular type of criminal conduct defined at length in the statute. The conduct must be willful, malicious and repeated, and form “a course of conduct which would “cause[ ] substantial emotional distress” in a reasonable person in the same position as the victim ... See § 784.048, Fla. Stat. (Supp.1992). The conduct must “serve ... no legitimate purpose.” Id. Furthermore, the statute expressly provides that “[constitutionally protected activity is not included within the meaning of ‘course of conduct.’ Such constitutionally protected activity includes picketing or other organized protests.” Id.
[[Image here]]
The conduct described at length in the stalking statute is clearly criminal and is unprotected by the First Amendment. “While the First Amendment confers on each citizen a powerful right to express oneself, it gives the [citizen] no boon to jeopardize the health, safety, and rights of others.” [citations omitted]
Bouters, 659 So.2d at 237.
As for T.B.’s argument that there was insufficient evidence of substantial emotional distress to the victim, T.B. is correct that the standard is that of a reasonable person in the same position as the victim. See Ravitch v. Whelan, 851 So.2d *655 271, 273 (Fla. 5th DCA 2003) (citing Bowlers, 659 So.2d at 238). Here, T.B.’s conduct took place at a crowded shopping mall and the victim’s place of work, “a place [the victim] had to be and could not avoid.”[1] On three separate occasions, within a ninety minute period, T.B. taunted the victim with the words “faggot, queer.” Two of the incidents were in earshot of others, and one was yelled from the second floor of the crowded mall. Viewing the testimony in the light most favorable to the state, we conclude that, under the facts presented here, T.B.’s conduct would likely substantially emotionally upset a normal person in the same position as the victim. Obviously, many persons would not react in the same way as this victim; some might respond in kind, others might recall the old saying, “sticks and stones may break my bones but names can never harm me,” others might respond with violence, but in each instance, it is likely to cause emotional upset.
Without further comment on the evidence, we find it sufficient to prove that T.B. acted willfully and maliciously.
Thus, in this case, a rational trier of fact could find that the elements of misdemean- or stalking: willfulness, malice, repeated harassment, and emotional distress, have been established beyond a reasonable doubt. See Pagan, 830 So.2d at 803. Guilt, therefore, fell within the province of the trier of fact.
KLEIN, J., concurs.
FARMER, J., concurs specially without opinion.

. See D.L.D. v. State, 815 So.2d 746, 748 (Fla. 5th DCA 2002) (concluding in an aggravated stalking case that "D.L.D.’s conduct, continuing on an almost daily basis, of pursing and hitting J.R. at school (a place J.R. had to be and could not avoid) ... would likely substantially upset any normal person under the reasonable person standard”).