[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11679

Non-Argument Calendar

_____

MICHAEL FLOYD,
an individual,

                                                            Plaintiff-Appellant,

*versus*

ZACHARY E. STOUMBOS,
an individual,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:20-cv-00353-RBD-EJK

_____

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

In this chapter of a long-running feud between two neighbors, we must decide whether Michael Floyd's malicious prosecution claim against Zachary Stoumbos survives summary judgment. At Stoumbos's urging, state prosecutors charged Floyd with disorderly conduct, stalking, and aggravated stalking—charges that they later dropped. But Floyd has not shown a lack of probable cause to support the criminal case, so we affirm the court's grant of summary judgment to Stoumbos.

## I.

As the district court put it: "Plaintiff Michael Floyd and Defendant Zachary Stoumbos were neighbors—though certainly not in the biblical sense, as there was no love lost between them." Floyd and Stoumbos owned adjacent lakefront properties in Windermere, Florida. Stoumbos, a criminal defense attorney, lived in a home on his property while Floyd, an Irish national, lived in the United Kingdom. Floyd's property was mostly vacant except for a small shed.

Over a decade ago, the two began fighting over Floyd's planned construction of a boat dock on his property. Eventually, Stoumbos sued Floyd in Florida state court, alleging that Floyd

built his dock out of compliance with an agreement between the two.  He also claimed that Floyd continued installing cameras near his property line—despite repeated requests to stop—that filmed Stoumbos's property and even inside his house.  Undeterred, Floyd added more cameras on this property line over the next few years, eventually totaling eighteen.

While this lawsuit was ongoing, another conflict arose. Floyd placed an outdoor radio on his dock that played loud music continuously from early morning until late evening.  Floyd put the radio there, he explained, to "deter otters and birds" from "using the dock as a bathroom."  He also placed a radio in a shed on the property to scare away would-be intruders, among other reasons. Stoumbos claims that the noise from the radios was "brutal" and "life altering."

Near the end of 2013, Stoumbos decided to take action.  He first called the police, who sent an officer to the property.  He told the officer that he could hear the dock radio from his property, including from his patio.  The officer confirmed that he could hear the radio from Stoumbos's property.  The officer called Floyd, and Floyd told him the radio was on a timer and kept wildlife away. Floyd also said, according to the officer, that it was "not to[o] loud in his opinion and that he has no intentions of turning it off or down."

The music played on.  In January 2014, Stoumbos secured an injunction in state court against Floyd, barring him from playing music from the radios that could be heard beyond fifty feet away.

One day after the injunction was entered, Stoumbos called the police again. The deputy who responded estimated that music was still "clearly audible" 100 feet away from the dock. He turned the music off.

Five days later, Stoumbos called the police yet again. A different deputy responded, although this deputy knew about the previous visit. This time, the deputy heard music coming from the shed around 200 feet away. He executed an arrest affidavit for Floyd. Eventually, the radios "were turned off" in mid-March 2014, about two months after the injunction.

A state prosecutor filed charges against Floyd for disorderly conduct and stalking related to the music and cameras. Along the way, Stoumbos had pressured the prosecutors. Writing on his attorney letterhead, he requested that the case be "prosecuted to the fullest extent of the law" and he later sent "an in depth Memorandum of Law" to the state attorneys and asked for their thoughts. At one point, he told a prosecutor that he knew the elected State Attorney and would let him know how the prosecutors were handling his grievance. He even told a prosecutor that he would be "very angry" if charges were not filed.

After the prosecutor filed charges, a state court judge found probable cause for all counts and issued a warrant for Floyd's arrest. When Floyd returned to Florida, he was arrested and then released with instructions not to contact Stoumbos. Several months later, the prosecutor added another charge of aggravated stalking based on Floyd's installation of more cameras near

Stoumbos's property in violation of the no contact order. These extra cameras were 360-degree dome cameras that could save footage, and at least one contained a sign facing Stoumbos's property. The sign read "WARNING 24HR CCTV" and "Images are remotely stored & monitored for the prevention and detection of crime."

Two-and-a-half years after first filing charges, the prosecutor dropped all four counts. By his assessment, although there was "a reasonable likelihood of prevailing at trial when the case was initially filed, that likelihood has decreased substantially through the discovery process." He elaborated that it would be hard for the State to prove that Floyd knew about the court orders, installed the music or cameras himself, and did not have a legitimate purpose. After the charges were dropped, Floyd sued Stoumbos in federal court for malicious prosecution.

When Stoumbos moved for summary judgment, the court granted the motion. It reasoned that Floyd could not show that Stoumbos was the legal cause of the proceeding and that there was no absence of probable cause, both of which are required for a malicious prosecution claim under Florida law. There was no legal cause, it said, because Stoumbos did not knowingly provide any false information and none of his actions were "the determining factor" in Floyd's prosecution. What's more, "probable cause supported every stage" of the proceeding brought against Floyd.

Floyd now appeals.

## II.

We review a grant of summary judgment de novo. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011). On summary judgment, we must view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).

## III.

To show malicious prosecution under Florida law, a plaintiff must prove six elements: "(1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff." *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1218 (Fla. 1986) (quotation omitted). "If any one of these elements is lacking, the result is fatal to the action." *Id.* (quotation omitted).

To show the fourth element, a plaintiff must prove that the proceeding was "initiated by the *defendant* without probable cause," meaning that we evaluate probable cause from the perspective of the malicious prosecution defendant. *Id.* at 1219 (emphasis added); *see also Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 603 (Fla. Dist. Ct. App. 2011). Here, that is

Stoumbos.  And under Florida law, probable cause is "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Burns*, 502 So. 2d at 1219.  Proving the lack of probable cause is an "onerous requirement." *Id.*

Floyd cannot meet that onerous requirement.  When relevant facts are undisputed, we may decide probable cause "as a question of law." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1357 (Fla. 1994) (quotation omitted).  Floyd cannot show that Stoumbos lacked reasonable suspicion, supported by the circumstances, for any of the four counts.[1]  As a result, his malicious prosecution claim fails.[2]

## A.

We first address disorderly conduct.  Under Florida law, a conviction for disorderly conduct can result from acts that "affect the peace and quiet of persons who may witness them." Fla. Stat. § 877.03.

Stoumbos had probable cause to believe that Floyd violated this statute.  Floyd does not dispute that music played from the

---

[1] We do not decide whether probable cause must exist for all four counts because "no Florida court has taken a firm stand on this question." *Hall v. Sargeant*, No. 18-80748, 2020 WL 1536435, at *27 n.30 (S.D. Fla. Mar. 30, 2020).

[2] We need not consider whether Floyd also failed to show legal cause.

dock during daylight hours and from the shed at regular intervals. Nor does he dispute that Stoumbos and the investigating officers heard music from Stoumbos's property, some distance away from the radios. The parties dispute the *exact* distance and the *exact* decibel level, as well as how disruptive the noise was. But we need not decide those facts to find probable cause. Stoumbos had, at minimum, a reasonable suspicion that someone's (his family's) peace and quiet was affected, and this suspicion was supported by the fact that music was played for long stretches at discernible volumes on Floyd's property. That's enough for probable cause.

The officer's probable cause finding bolsters this conclusion. That an officer "clearly stated that there was probable cause to arrest" is some evidence of probable cause. *Southland Corp. v. Bartsch*, 522 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 1988). Here, the officer who completed the arrest affidavit for disorderly conduct wrote on the affidavit that he could hear music 200 feet from the shed, and his report refers specifically to his "probable cause."

The same goes for the probable cause findings of the prosecutor and state judge. The filing of an information "constitutes evidence of reasonable grounds for the prosecution." *Colonial Stores, Inc. v. Scarbrough*, 355 So. 2d 1181, 1185 (Fla. 1977). The prosecutor's information here not only charges Floyd with disorderly conduct, but also specifically referenced "playing loud music." Likewise, the "Probable Cause Order" issued by the state court judge—after examining the affidavits and exhibits—buttresses the fact that Stoumbos himself had probable cause.

**B.**

We next turn to the three stalking charges.  In Florida, a person commits the offense of stalking when he "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person."  Fla. Stat. § 784.048(2).

Floyd's repeated, continual playing of loud music and multiple camera installations at the property line underlie these stalking charges.  We must decide whether Stoumbos could reasonably suspect that these actions were willful, malicious, and harassing under the statute.

*First*, Stoumbos could reasonably suspect that Floyd's actions were willful and malicious.  No one disputes that Floyd intended to play the radios and install the cameras.  Indeed, the fact that it happened on Floyd's property is enough to suspect willfulness.  Whether these actions were malicious is a closer question.  On summary judgment, we must assume that Floyd intended for the music to deter wildlife and intruders, as he claims, and that he installed the cameras to prevent crime.

But the relevant question is not what Floyd intended—it is how Stoumbos could have reasonably perceived the actions given the circumstances.  Context is vital: the neighbors had a long history of bitter squabbles and retaliatory actions.  In fact, they were embroiled in civil litigation at the time of the music and extra cameras.  Moreover, the number and placement of the cameras—near the property line—support at least a suspicion of ulterior

motives in their installation. The same goes for the radio's timing and volume. Altogether, the circumstances support a reasonable suspicion of maliciousness.

*Second*, Stoumbos could reasonably suspect that these actions constitute harassment. The stalking statute defines "harass" as engaging "in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." Fla. Stat. § 784.048(1)(a). Courts have clarified that "emotional distress" refers to an objective, reasonable person standard. *Bouters v. State*, 659 So. 2d 235, 238 (Fla. 1995). For probable cause, Stoumbos needed to only suspect—not prove—such objective emotional distress. He could here. Floyd's actions were close enough to the kind of repeated conduct that Florida courts have found create emotional distress under the stalking statute. *See, e.g.*, *Robertson v. Robertson*, 164 So. 3d 87, 88 (Fla. Dist. Ct. App. 2015); *Johnstone v. State*, 298 So. 3d 660, 665 (Fla. Dist. Ct. App. 2020).

Like our "maliciousness" analysis, Stoumbos could suspect that Floyd directed his actions at him (not the otters) without legitimate purpose. In assessing legitimate purpose, we can consider the actions collectively because stalking "is a series of actions that, when taken individually, may be perfectly legal." *Huch v. Marrs*, 858 So. 2d 1202, 1203 (Fla. Dist. Ct. App. 2003). Moreover, we judge not only Floyd's actions, but also "the manner they were performed." *Johnstone*, 298 So. 3d at 665.

22-11679                Opinion of the Court                11

In the context of the neighbors' ongoing fights, Stoumbos could reasonably question Floyd's extensive measures. Music may effectively deter animals or intruders, but the alleged harassment stemmed from its volume and incessantness. And cameras logically deter crime and have other uses, but the alleged harassment came from their ever-growing number and position on the property line. The manner by which Floyd performed these actions casts doubt on the legitimacy of their purpose.

Of course, we do not decide whether Floyd actually stalked Stoumbos. Whether his conduct was malicious, harassing, or without legitimate purpose is not before us. In fact, when the prosecutor dropped the charges, he cited concerns with proving some elements of stalking at trial. Even so, Stoumbos could have reasonably suspected that Floyd's actions were stalking. That's sufficient for probable cause.

Aggravated stalking requires something more: stalking after a "court-imposed prohibition of conduct toward the subject person or that person's property." Fla. Stat. § 784.048(4). The prosecutors charged Floyd with two counts of aggravated stalking. One count was based on a violation of three court orders: the initial injunction limiting the music and two later orders compelling compliance. The second aggravated stalking count was based on the "no contact order" entered after Floyd's arrest.

Probable cause existed for both aggravated stalking charges. For the latter "no contact" order, no one disputes that cameras were installed after the order. As explained above, Stoumbos could

reasonably suspect that the installation of these cameras—especially given the escalation of the neighbors' feud—constituted stalking.  He also could reasonably suspect, based on the cameras' positions and signage, that they filmed him, and that this filming violated the "no contact" order.  The prosecutor even visited Floyd's property to inspect the cameras himself before adding this charge, underlining the existence of probable cause.

Probable cause also exists for the injunction violation.  Floyd does not dispute that loud music played after the injunction.  He does claim, however, that he did not know about the injunction when the officer visited shortly after it issued.  This argument fails on multiple fronts.  To start, it does not explain any violation of the later orders to comply with the injunction—Floyd admits that he received a certified copy of the order one day after it was entered. Even if Floyd never knew about the injunction, no one disputes that his attorney attended the injunction hearing.  That alone would be enough to create reasonable suspicion that Floyd knew about the court's order.

In short, probable cause existed from Stoumbos's perspective for all three stalking charges and the disorderly conduct charge.  The undisputed facts create a reasonable suspicion, under the circumstances at the time, that Floyd committed those crimes. For all charges, the probable cause findings by the officers, prosecutor, and state judge support this conclusion.  After all, probable cause is generally "not a high bar." *See J.J. v. State*, 312 So. 3d 116, 119–20 (Fla. Dist. Ct. App. 2020) (quotation omitted).

22-11679                Opinion of the Court                13

★    ★    ★

We **AFFIRM** the district court's order.